UNITED STATES of America, Plaintiff,

v.

Scott E. HILDEBRAND, Sandra K. Hildebrand, Quentin E. Hildebrand, Joseph A. Mentlick, Jr., Donald W. Borgmann, David I. Gardemann, Kenneth L. Kraklio, Allen K. Zurcher, Larry A. Webb, and Joan M. Webb, Defendants.

No. CR 95–2014.

United States District Court,
N.D. Iowa,
Eastern Division.

May 16, 1996.

Order Granting Reconsideration
to Limited Extent May 30, 1996.

Robert Teig and Judith Whetstine, Asst. U.S. Attys., Cedar Rapids, IA, for U.S.

Joseph A. Mentlick, Jr., Larry A. Webb and Joan M. Webb, pro se.

## ORDER ON TRIAL MANAGEMENT

BENNETT, District Judge.

It would seem that early in the career of every trial lawyer, he or she has lost a case by leaving something out, and thereupon resolved never again to omit even the most inconsequential item of possible evidence from any future trial. Thereafter, in an excess of caution the attorney tends to overtry his case by presenting vast quantities of cumulative or marginally relevant evidence. In civil cases, economics place some natural limits on such zeal. The fact that the attorney's fee may not be commensurate with the time required to present the case thrice over imposes some restraint. In a criminal case, however, the prosecution, at least in the federal system, seems not to be subject to such fiscal constraints, and the attorney's enthusiasm for tautology is virtually unchecked.

*United States v. Reaves,* 636 F.Supp. 1575, 1576 (E.D.Ky.1986). Mindful of these insightful comments, this criminal case comes before the court *sua sponte* for consideration of the means to be employed to guarantee a just and efficient trial. Because this case involves multiple defendants and multiple counts, many of which charge violation of the same statute and all of which stem from the same alleged conspiracy or scheme, as well as many witnesses, and voluminous items of documentary and other evidence, at least some share of the evidence and testimony that could potentially be presented to the jury is likely to be cumulative. Thus, the case runs a substantial risk of being both confusing to a jury and excessively long. As

the Supreme Court has observed, "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1333–35, 47 L.Ed.2d 592 (1976). This order is designed to allow this court to exert the necessary control.

## I. INTRODUCTION AND BACKGROUND

In a fifty-nine page, forty-four count indictment returned on September 14, 1995, eleven defendants[1] are each charged with one or more federal offenses, ranging from conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (Count I), to mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 through 42), to conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 43), to criminal forfeiture under 18 U.S.C. § 982 (Count 44). The indictment alleges a complex scheme to defraud individuals whereby defendants falsely represented to individuals that, as a result of a class-action lawsuit in the United States District Court in Colorado, the entire banking system in the United States, as well as the IRS and the Federal Reserve, were declared to be fraudulent and unconstitutional.[2] Defendants allegedly represented that as a result of the Colorado lawsuit, any individual who had ever paid taxes or used Federal Reserve notes was eligible to receive "damages" if that individual filed a claim on defendants' form and paid defendants a fee of $300.00. The indictment further alleges that, as a result of this scheme, defendants obtained some 6,832 claims from individuals in 49 states and two Canadian provinces.

In a status report filed on May 13, 1996, shortly before a scheduling conference on preparation of this case for trial to begin on June 27, 1996, the United States represented that the likely number of documents the prosecution must review exceeds 100,000. Furthermore, the government represented that over one hundred specific exhibits have thus far been identified, but the case agent identifying those exhibits estimates that she has "been through" only approximately ten percent of the potential exhibits. The government also represented that, to date, it has identified over three dozen potential witnesses. Thus, it is apparent that without some exercise of control by the court, this trial has the potential for mushrooming into a confusing, lengthy, and hence potentially unjust proceeding that makes inefficient use of the parties', the court's, and the jury's time and the public's resources. Although the court has severed out for trial on June 27, 1996, only three of the ten defendants, with the remaining defendants to be tried later this year, the court nonetheless views with concern the volume of evidence likely to be presented at the upcoming trial.

## II. LEGAL ANALYSIS

### A. Legal Authority For Reasonable Limitations

Numerous courts have grappled with the authority of the district judge to impose reasonable limitations on the manner in which cases, both civil and criminal, are presented to the jury, including the amount of time afforded the parties to present their cases, the amount of testimony and other evidence that can be presented during trial, and other restrictions on the conduct of counsel and the parties. The court is particularly indebted to Judge Bertelsman of the United States District Court for the Eastern District of Kentucky for his insightful discussion of these questions nearly a decade ago. *See United States v. Reaves,* 636 F.Supp. 1575 (E.D.Ky. 1986). This court joins others that have been

---

1. One defendant has since decided to plead guilty to some or all of the charges against him.

2. The indictment alleges that the lawsuit that is the cornerstone of the scheme was the decision in *Baskerville v. Federal Land Bank,* No. 93–C–1781 (D.Colo. June 25, 1993), *affirmed,* 25 F.3d 1055, 1994 WL 232117 (10th Cir. June 1, 1994) (table opinion). In *Baskerville,* the plaintiffs sued banks, law firms, judges, and individuals, after their farms and personal property were seized to satisfy certain loans. *Baskerville,* 1994 WL 232117, at *1. The complaint included "vague assertions that government agencies perpetrated a fraud through the Federal Land Bank, and that various state and federal employees caused the plaintiffs damage." *Id.* The Tenth Circuit affirmed the district court's granting of the defendants' motions to dismiss on the grounds that the complaint failed to state a claim. *Id.*

impressed with Judge Bertelsman's thoughtful analysis of the court's authority to exercise such controls over trials as well as his practical suggestions for the manner in which such controls may be effected. Among Judge Bertelsman's apt observations is the aphorism, "Advocates tend to confuse quantity of evidence with probative quality." *Reaves*, 636 F.Supp. at 1579.[3] The judge also observed, in this court's view, quite accurately, that

> It has become apparent that courts must recognize that it is they, rather than the attorneys, who have a more objective appreciation of the time a case requires when balancing its needs against the exigencies of the court's docket.

*Id.* He also sided with Judge Leval of the United States District Court for the Southern District of New York, who had discovered five primary benefits of a court's imposition of limits on trials:

> It requires counsel to exercise a discipline of economy choosing between what is important and what is less so. It reduces the incidence of the judge interfering in strategic decisions. It gives a cleaner, crisper, better-tried case. It gives a much lower cost to the clients. Finally, it will save months of our lives.

*Reaves*, 636 F.Supp. at 1579 (quoting Leval, *From the Bench*, LITIGATION, 8 (1985)).

The Supreme Court stated at least the general principles under which the court must act to control trials in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), a case in which the Supreme Court overturned a trial judge's restrictions on contact between a criminal defendant and his attorney during an overnight recess in the middle of the defendant's direct examination on the stand. The Court stated:

> Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice. "[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, [the trial judge] may determine generally the order in which parties will adduce proof; [the judge's] determinations will be reviewed only for abuse of discretion. Within limits, the judge may control the scope of rebuttal testimony; may refuse to allow cumulative, repetitive, or irrelevant testimony; and may control the scope of examination of witnesses. If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.
>
> The judge[ ] [has] power to control the progress and, within the limits of the adversary system, the shape of the trial....

*Geders*, 425 U.S. at 86–87, 96 S.Ct. at 1334–35 (internal citations omitted). Other decisions of the federal courts have given more specific content to the judge's power to control the progress and shape of a criminal or civil trial.

There seems to be no disagreement among the federal courts that district judges have broad discretion in managing their dockets, including trial procedure and the conduct or pace of trials. *See, e.g., Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir.1996) (the trial judge has "broad" discretion to regulate the pace of trial, and must not be a "passive spectator"); *General Signal v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1508 (9th Cir.1995) ("Generally, a district court may impose reasonable time limits on a trial."), *cert. denied*, — U.S. —, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir.1995) ("We ... believe that courts have discretion to impose limits on a party's trial presentation without the necessity of ruling specifically on 'each particular item of evidence offered,'" citing *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 10, 13 (D.Conn.1977)); *United States v.*

---

3. Equally apt is the judge's observation that, "Nothing lulls an attorney to the passage of time like the sound of his or her own voice. Few attorneys can tell you what time it is without describing how the clock was made." *Reaves*, 636 F.Supp. at 1579.

*Blum,* 62 F.3d 63, 67 (2d Cir.1995) (although the Fifth and Sixth Amendments "guarantee[ ] criminal defendants the right to present a defense," that right "must be balanced against a court's leave to set reasonable limits on the admission of evidence," citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986), and *United States v. Holmes,* 44 F.3d 1150, 1157 (2d Cir.1995), and observing that "judges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant' "); *Monotype Corp. PLC v. International Typeface Corp.,* 43 F.3d 443, 450 (9th Cir.1994) (" 'Trial courts have discretion to place reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence,' " quoting *Johnson v. Ashby,* 808 F.2d 676, 678 (8th Cir.1987)); *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 520 (5th Cir.) (district court may impose reasonable time limits on cases), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994); *Blair v. Eagle–Picher Indus., Inc.,* 962 F.2d 1492, 1500 (10th Cir.) ("It is axiomatic that the trial court has considerable discretion in determining how a trial is to be conducted," and " '[t]here can be no doubt of the power of the trial court, in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses,' " quoting *Chapman v. United States,* 169 F.2d 641, 642–43 (10th Cir.), *cert. denied,* 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406 (1948)), *cert. denied,* 506 U.S. 974, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992); *Reed v. Philadelphia, Bethlehem & New England R.R. Co.,* 939 F.2d 128, 133 (3d Cir.1991) ("In matters of trial procedure . . . the trial judge is entrusted with wide discretion because he [or she] is in a far better position than we to appraise the effect" of a particular procedure on the parties). A pithy and concise way to put the matter is this, "[A] court's resources are finite and a court must dispose of much litigation. In short, the litigants in a particular case do not own the court." *Duquesne Light Co.,* 66 F.3d at 610.

Although there is no disagreement that the court has the discretion to manage trials,

there also seems to be no disagreement that this discretion has its limits and must not be abused. *Sims,* 77 F.3d at 849 (case management "discretion has its limits," and appellate court will consider whether "the cumulative effect of the procedures used by [the trial judge] constituted an abuse of the broad discretion afforded judges in managing their dockets, including trial procedures and the conduct of the trial itself."); *General Signal,* 66 F.3d at 1507 ("This court reviews issues relating to the management of trial for an abuse of discretion."); *Duquesne Light Co.,* 66 F.3d at 609 ("We review a district court's decisions in its management of a trial for abuse of discretion."); *Blum,* 62 F.3d at 67 ("[W]e review the district court's evidentiary decision under an abuse of discretion standard."); *Monotype Corp.,* 43 F.3d at 450 (review of time limits in trial is for abuse of discretion).

The decisions considering the issue the court has raised here have most often found the trial court's power to limit evidence and the time for presentation of a case in the court's "inherent power," often citing as embodiments of that power Federal Rules of Evidence 403 and 611. *See, e.g., Reaves,* 636 F.Supp. at 1578–79. This court's review of these decisions begins with the observations of the Fifth Circuit Court of Appeals, which also opined that "[t]he role of a federal judge is not that of a mere moderator," citing *Posey v. United States,* 416 F.2d 545, 555 (5th Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127 (1970), but added cautions about elevating speed over justice:

> [T]he courts of this country labor under heavy caseloads, and in order to accommodate these caseloads some concessions to expediency are necessary. However, if the goal of expediency is given higher priority than the pursuit of justice, then the bench and the bar both will have failed in their duty to uphold the Constitution and the underlying principles upon which our profession is founded. Speed is necessary, and the limited capability of the judicial system certainly should be considered in determining whether to impose limits on the introduction of evidence and the length of trial. However, such considerations

must be addressed with a cautious respect for the requirements necessary to achieve a fair trial.

*Sims,* 77 F.3d at 849. Similarly, the Third Circuit Court of Appeals found that "a district court has inherent power 'to control cases before it,' provided it exercises the power ' "in a manner that is in harmony with the Federal Rules of Civil Procedure." ' " *Duquesne Light Co.,* 66 F.3d at 609 (quoting *G. Heileman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648, 652 (7th Cir.1989) (en banc), in turn quoting *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.,* 867 F.2d 996, 1002 (7th Cir.1989)).

In *Duquesne Light Co.,* the court identified the principal rules governing federal cases in which trial management authority is embodied:

> The [rules of evidence and procedure] repeatedly embody the principle that trials should be both fair and efficient. Thus, the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Fed.R.Civ.P.* 1. Similarly, the Federal Rules of Evidence "shall be construed to secure ... elimination of unjustifiable expense and delay." *Fed.R.Evid.* 102. More particularly, *Fed. R.Evid.* 403 allows judges to exclude even relevant evidence because of "considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
>
> \*    \*    \*    \*    \*    \*
>
> .... After all, " 'it has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by [its] own judgment and whim.' " *MCI Communications [Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081,] 1171 [ [(7th Cir.),] (quoting 6 Wigmore, Evidence § 1907 (Chadbourne Rev.1976)), [*cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983) ].

*Duquesne Light Co.,* 66 F.3d at 609. Similarly, the Fifth Circuit Court of Appeals rejected a challenge to a three-day limitation on the plaintiff's case, stating,

> Fed.R.Evid. 403 and 611(a) give the district court wide discretion in the management of its docket and the presentation of evidence. A party is not entitled, as a matter of right, to put on every witness he [or she] may have. In the management of its docket, the court has an inherent right to place reasonable limitations on the time allotted to any given trial.

*Deus,* 15 F.3d at 520 (citations omitted). Having established the court's authority to place reasonable restrictions on the time and presentation of evidence in trials, the court next seeks to identify what restrictions are "reasonable," or, to put it another way, to determine what limitations confine a court's discretion to impose limitations.

In a quest for the proper limitations on the court's authority to manage the presentation of evidence, this court turns again to the observations of the Fifth Circuit Court of Appeals in *Sims:*

> A trial is a proceeding designed to be a search for the truth. *See Nix v. Whiteside,* 475 U.S. 157, 158, 106 S.Ct. 988, 989–90, 89 L.Ed.2d 123 (1986).... Essential to the endeavor is an opportunity for the parties through their lawyers to present information in a manner that is comprehensible to a judge or jury. In this respect, the role played by lawyers in a trial is paramount. *When the manner of the presentation of information to a jury is judicially restricted to the extent that the information becomes incomprehensible then the essence of the trial itself has been destroyed.*

*Sims,* 77 F.3d at 849 (emphasis added). The court will, of course, strive to ensure that any restrictions it imposes on the presentation of information to the jury in this case do not cause the information presented to become incomprehensible.

■ Further cautions come from a decision of the Tenth Circuit Court of Appeals in which the district court attempted to limit the government to prosecution of its "ten best" counts of a seventy-count indictment as well as limiting the government to use of the testimony of only ten of the thirty-five alleged victims of the telemarketing fraud scheme under prosecution. *United States v.*

*Zabawa,* 39 F.3d 279, 283–84 (10th Cir.1994). The government contended on appeal that reducing the counts it could prosecute and the witnesses it could use to prosecute those counts prevented it from presenting the necessary evidence to convict all defendants and raised legitimate double jeopardy concerns concerning the counts it was not allowed to try. *Id.* at 284. The appellate court concluded that the district court's exercise of its discretion to manage the trial had improperly trespassed on the prosecutorial function:

> Certainly a district court has reasonable discretion in appropriate cases to manage its docket by granting particular defendants separate trials or disallowing cumulative testimony on a particular charge. But the order appealed from here neither separates defendants for trial nor limits testimony relevant to a single charged crime. It limits the prosecution to the testimony of ten victims of a telemarketing scheme, to prove only ten of seventy charged crimes against thirteen individual defendants (fourteen, including the defendant corporation).

> Because the district court's ruling forces the government to abandon, at least temporarily, the prosecution of separate crimes it has charged against defendants who are scheduled to be tried, we believe the ruling goes beyond those subject to the court's discretionary control and impinges upon the separation of powers. Prosecutorial discretion is a function of the executive branch, not the judiciary.

> \* \* \* \* \* \*

> ... We conclude that the district court erred in ordering the government to elect counts, and we reverse that portion of the November 4 order.

*Zabawa,* 39 F.3d at 284–85. Although this decision cautions courts not to trespass on prosecutorial function by limiting the counts the government may prosecute, it is interesting to note that the appellate court did not reverse the limitation on witnesses who could be called to support those counts. The court reads the *Zabawa* decision as at least implicitly supporting the proposition that prosecutorial authority is not necessarily impinged by limitations on cumulative testimony. *Id.*

at 284 ("Certainly a district court has reasonable discretion in appropriate cases to manage its docket by ... *disallowing cumulative testimony on a particular charge*"; emphasis added). This proposition is supported more directly by other decisions as well. *See United States v. Wallace,* 32 F.3d 921, 929 (5th Cir.1994). In *Wallace,* the court considered a challenge to the district court's ruling excluding the testimony of two DEA agents in support of a criminal prosecution:

> We ... note that the necessity or value of the two agents' testimony was questionable. We have reviewed defense counsel's proffer of what testimony they would have elicited from [the two agents], and we are satisfied the issues involving the agents were adequately brought out by other testimony. Therefore, we hold ... that the exclusion of the two witnesses may be upheld under the trial court's power to control the trial and limit testimony that would be cumulative and marginally relevant.

*Wallace,* 32 F.3d at 929. The court cited with approval authority standing for the proposition that, like many other constitutional rights, the right to call witnesses is not absolute, and may give way to "legitimate interests in the criminal trial process." *Id.* (citing *United States v. Bertoli,* 854 F.Supp. 975, 1081–82 (D.N.J.1994), *aff'd in part, vac'd in part,* 40 F.3d 1384 (3d Cir.1994).

However, when excluding witnesses, it is apparent that the court may not do so on the basis of "mere numbers." *Secretary of Labor v. DeSisto,* 929 F.2d 789, 795 (1st Cir. 1991); *MCI Communications,* 708 F.2d at 1171. Instead, courts have required that the testimony of witnesses be balanced as required by *Fed.R.Evid.* 403, balancing probative value against the negative factors of delay, cumulativeness, and waste of time. *Id.* (so concluding and citing with approval prior authority holding that "in no event at this pre-trial stage should witnesses be excluded because of mere numbers without reference to the relevancy of their testimony," quoting *Padovani v. Bruchhausen,* 293 F.2d 546, 550 (2d Cir.1961)). Thus, the court concludes that the number of witnesses called in a criminal prosecution may be limited to

avoid cumulative testimony in support of a particular charge.

■ Similarly, the court concludes that courts may restrict by pre-trial order the presentation of evidence to certain questions, at least where the restriction does not prevent a party from pursuing his or her theory of the case. *United States v. Hassan El*, 5 F.3d 726, 731–32 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994). However, the court is mindful that there is no requirement that the government proffer only enough evidence to allow the jury to convict a criminal defendant, but no more. *United States v. Fortenberry*, 971 F.2d 717, 721–22 (11th Cir.1992) (finding no such limitation in *Fed.R.Evid.* 403), *cert. denied,* 506 U.S. 1068, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993).

Considering specifically the district court's authority to impose time limitations on parties, the Third Circuit Court of Appeals provided guidance this court finds generally applicable to the question of how limitations are to be determined:

> [B]ecause by their very nature such procedures can result in courts dispensing with the general practice to evaluate each piece of offered evidence individually, *district courts should not exercise this discretion as a matter of course.* As one court has put it, *witnesses should not be excluded "on the basis of mere numbers." MCI Communications*, 708 F.2d at 1171. Rather, *a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time.* And, the court must ensure that it *allocates trial time evenhandedly.* But still the courts need not allow parties excessive time so as to turn a trial into a circus....
>
> ... [W]hile courts certainly have flexibility in reassessing imposed time limits, they *ordinarily should allow a party to fill its allotment with whatever evidence that party deems appropriate,* subject, of course, to rules of admissibility independent of the overall time limitation for the case being tried. As a corollary, *an allocation of trial time relied upon by the parties should not be taken away easily and without warning.*

*Duquesne Light Co.*, 66 F.3d at 610 (emphasis added). Many courts have postulated that evidence may not be excluded solely to avoid delay. *General Signal*, 66 F.3d at 1509; *Duquesne Light Co.*, 66 F.3d at 610; *DeSisto*, 929 F.2d at 795; *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1305 (8th Cir.1991). This is so, because "[t]he imposition of time limits [is] a factor that goes to the fairness of the trial." *Monotype Corp.*, 43 F.3d at 450. Thus, as a concomitant of the power to impose pre-trial limitations, the Ninth Circuit Court of Appeals and other courts have required sufficiently flexible application during trial of limitations imposed pre-trial, because courts "must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency." *General Signal*, 66 F.3d at 1508–09; *Duquesne Light Co.*, 66 F.3d at 610; *Monotype Corp.*, 43 F.3d at 450 ("Courts have ... disapproved of rigid hour limits on trials," citing *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 473 (7th Cir.1984)); *Deus*, 15 F.3d at 520; *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir.1991). Another concomitant is the requirement that the court balance the probative value of the proffered evidence against the harm of the delay. *Fed.R.Evid.* 403 (requiring such a balancing before excluding relevant evidence); *General Signal*, 66 F.3d at 1510; *Blum*, 62 F.3d at 68 (rejecting the district court's limitations on evidence because the district court failed to perform the balancing analysis required under *Fed.R.Evid.* 403); *DeSisto*, 929 F.2d at 789.

■ Extrapolating from these precedents, the court finds the following general principles should guide the court in fashioning appropriate limitations for the sake of comprehensibility, economy, and fairness: (1) the court must impose no restriction that causes the information presented to become incomprehensible; and (2) no restriction or limitation should be imposed arbitrarily. In aid of these principles, the court will be guided by these general rules: (1) limitations must only be imposed when necessary to the just and

efficient presentation of evidence, or, to put it another way, "if it isn't broken, don't fix it," which means leave areas that do not appear to be a problem well enough alone; (2) limitations should be made on the basis of an informed analysis, including review of proposed witness lists and proffered testimony, exhibits, or estimates of trial time; (3) no limitation may be imposed without balancing probative value against issues of delay, confusion, or waste of time pursuant to *Fed. R.Evid.* 403 and 611; (4) the parties should be allowed to decide how best to use whatever allotment is given them; (5) any pre-trial limitations must be flexibly administered during trial to prevent any sacrifice of justice to efficiency; (6) changes in allotments, either admitting additional evidence or testimony or precluding more evidence or testimony than anticipated, must only be made with notice and upon a determination of need.

■ In addition to general rules to guide the court, these precedents also establish that the trial judge has the authority to manage the trial of a case, civil or criminal, by limiting the amount of time allotted to the parties for the presentation of their cases. *See, e.g., General Signal,* 66 F.3d at 1508 (district court may impose time limits in the name of efficiency that are sufficiently flexible to serve the ends of justice); *Duquesne Light Co.,* 66 F.3d at 609–11 (citing cases so holding, but criticizing the district court's imposition of time limitations mid-trial that were substantially different from those originally imposed only because the appellate court could find no review by the district court of any proffered materials prior to issuing the mid-trial change and the change had potentially affected the party half done with its case more than the party that had not yet begun its case; nonetheless, the district court's decision was not reversed, because the appellate court was "unable to conclude that its ruling had any impact on the outcome of the case."); *Monotype Corp.,* 43 F.3d at 451 (district court's time limits

were reasonable even though they were less than the parties' estimates); *Deus,* 15 F.3d at 520 (three-day limit on plaintiff's case was not an abuse of discretion); *United States v. Rodriguez Cortes,* 949 F.2d 532, 545 (1st Cir.1991) ("It is within the trial court's discretion to impose reasonable time limits on the presentation of evidence."); *M.T. Bonk Co.,* 945 F.2d at 1408 ("Trial courts have discretion to place reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence," citing *Fed. R.Evid.* 403 and 611, and *MCI Communications,* 708 F.2d at 1171.); *Borges v. Our Lady of the Sea Corp.,* 935 F.2d 436, 442–43 (1st Cir.1991) (the court may properly impose reasonable time limits on the presentation of evidence); *MCI Communications,* 708 F.2d at 1170–71 (upholding reasonable time limitations); *Fed.R.Civ.P.* 16(c)(15) (listing discussions over time limitations as a proper topic for pretrial conferences). The court may also impose limitations on the number of witnesses to be called by any party where the witnesses' testimony is cumulative as to a particular charge. *Zabawa,* 39 F.3d at 284–85 (reversing restrictions on counts that could be prosecuted but not reversing restrictions on numbers of witnesses called to prove particular charges); *Wallace,* 32 F.3d at 929 (court properly excluded two prosecution witnesses in a criminal case as needlessly cumulative); *Deus,* 15 F.3d at 520 ("A party is not entitled, as a matter of right, to put on every witness he [or she] may have."); *Blair,* 962 F.2d at 1500 (the court may use reasonable discretion in limiting the number of expert witnesses); *Borges,* 935 F.2d at 443 (court could properly exclude a witness where his testimony was cumulative of the testimony of another witness); *United States v. Rising,* 867 F.2d 1255, 1260 (10th Cir.1989) (limiting cumulative testimony in a criminal trial is well within the trial court's discretion). Many cases recognize the trial court's power to limit cross-examination without impinging on a criminal defendant's right of confrontation.[4] Finally, the court may limit

---

**4.** Although the court doubts at this time that it will impose a pre-trial limitation on cross-examination, myriad decisions, just of this circuit, establish the court's authority to limit cross-examination in the course of trial. *See, e.g., United States v. Darden,* 70 F.3d 1507 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996); *United States v. NB,* 59 F.3d

the introduction of any evidence that is needlessly cumulative or confusing even if relevant. *Hassan El,* 5 F.3d at 731 (district court's pretrial order in criminal case limiting presentation of evidence to particular questions was no abuse of discretion where the defendant nonetheless was able to pursue his theory of the case); *Fed.R.Evid.* 403, 611.

### B. *Potential Limitations That May Be Imposed Here*

■ In light of these rules and precedents, the court concludes that it may be proper for the court to impose the following restrictions upon the parties in the prosecution and defense of this trial: (1) time limitations on each party for the presentation of its case-in-chief; (2) limitations on the numbers of witnesses; (3) limitations on exhibits. However, the court cannot make a proper determination of the specific limitations, if any, to be imposed, in light of probative value versus cumulative effect, waste of time, or delay, without receiving information from the parties concerning the time they believe presentation of their cases should require as well as the extent of the evidence, testimonial or documentary, by which they intend to prove their case or defend charges against them. Yet, the court has no intention of standing usual criminal procedure on its head by requiring pre-trial disclosure of any information not normally disclosed to opponents pre-trial.

The court's solution is relatively simple. The court will require the parties to make disclosures, *ex parte* and under seal, of the information the court requires to manage the trial of this case in a just and efficient manner. The court will review all submissions *in camera,* make its determinations of the proper needs for trial, and may then file a trial management order identifying potential redundancies in witnesses or exhibits solely by number. In order to aid the court in making assessments that are not based on "mere numbers," the parties will be required to provide both an indication of counsel's estimate of priority of the witness or exhibit, as well as a summary of each witness's testimony and the content and purpose of an exhibit. The more carefully counsel fulfills this obligation, the more accurately the court will be able to determine, first, whether any limitations should be imposed and, second, which limitations, if any, will advance the goals of a just and efficient trial.

The court will not at this time strike any witness, exhibit, or other evidence, but may instead find it appropriate to impose what it finds to be reasonable limitations on the time for trial and numbers of witnesses and exhibits, possibly broken down by categories. The ultimate strategic decisions of what witnesses to call or other evidence to present, within the allotments that may be made by the court, will be left to the parties. Furthermore, the parties will be allowed to petition for relief from any case management order ultimately entered, either by written pre-trial motion, filed under seal if necessary, or by *ex parte* motion to the court during trial.

The case management order promulgated by the court shall, in the first instance, apply only to those parties for whom trial is set to begin June 27, 1996. Those parties for whom trial has been set later in the year will be subject to a subsequent requirement to file a trial management report and shall be subject to a subsequent trial management order.

### IT IS THEREFORE ORDERED THAT

1. **Not later than June 6, 1996,** *parties for whom trial has been set to begin June 27, 1996,* including the attorneys for the government and the parties appearing *pro se,*[5] shall submit to the court a **Trial Management Report,** *ex parte* **and under seal,** consisting of the following:

   a. The party's **estimate of the minimum and maximum amount of time** in which the party can reasonably present its case-in-chief and rebuttal, if the party

771 (8th Cir.1995); *United States v. Jackson,* 29 F.3d 397 (8th Cir.1994); *United States v. Durham,* 868 F.2d 1010, 1013 (8th Cir.), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989).

**5.** Nothing in this order shall be construed to require stand-by counsel for *pro se* defendants to do anything to prepare a Trial Management Report unless authorized to do so by the *pro se* party to which the stand-by counsel is assigned.

is entitled to any, exclusive of time for cross-examination of any witness.

b. **A witness list,** identifying each witness the party reasonably expects to call in its case-in-chief and rebuttal, if the party is entitled to any rebuttal.

  i. Each witness shall be identified by name and number.

  ii. Each witness shall further be assigned a letter indicating the party's good faith estimation of the witness's priority, indicated by the letters A, B, or C, with A as most necessary, and C as least necessary.

  iii. Identification of each witness shall also include a summary of the witness's expected testimony that is sufficiently specific to enable the court to determine the relevance and possible cumulativeness of the witness's testimony. The identification shall also indicate to what counts and defendants the witness's testimony is relevant.

c. **An exhibit list,** identifying each exhibit the party reasonably expects to use in its case-in-chief and rebuttal, if the party is entitled to any rebuttal.

  i. Each exhibit shall be identified by number and brief descriptive title.

  ii. Each exhibit shall further be assigned a letter indicating the party's good faith estimation of the exhibit's priority, indicated by the letters A, B, or C, with A as most necessary, and C as least necessary.

  iii. Identification of each exhibit shall also include a summary of the exhibit's content and purpose that is sufficiently specific to enable the court to determine the relevance and possible cumulativeness of the exhibit. The identification shall also indicate to what counts and defendants the exhibit is relevant.

2. Following *in camera* review of the submissions of the parties, the court may promulgate a Trial Management Order, specifying such limitations on the time for trial, and the numbers of witnesses, exhibits, and other evidence the parties may present at trial as the court may determine are appropriate.

Because defendants Larry A. Webb and Joan A. Webb have been uncommunicative and did not appear at the scheduled hearing, the court further orders that the United States Marshal Service shall personally serve a copy of this order on defendants Larry A. Webb and Joan A. Webb as soon as possible.

**IT IS SO ORDERED.**

## ORDER ON MOTION TO RECONSIDER ORDER ON TRIAL MANAGEMENT

■ Can the court properly order all parties in a criminal prosecution to file trial management reports *ex parte* and under seal identifying their witnesses and exhibits for the purpose of the court's evaluation of the need to promulgate reasonable limitations on the amount of time for presentation of evidence and limitations on the evidence itself? The court has entered an order requiring such reports in this case, and the government has moved to reconsider on the ground that a decision of the Eighth Circuit Court of Appeals precludes such *ex parte* reports to the court. The court now enters the following ruling on the government's motion to reconsider.

### I. INTRODUCTION AND BACKGROUND

On May 16, 1996, this court entered an Order On Trial Management directing the parties to provide prior to trial a Trial Management Report, *ex parte* and under seal. The Trial Management Report of each party is to provide the court with the following information: (1) each party's estimate of the minimum and maximum amount of time in which the party can reasonably present its case-in-chief and rebuttal, if the party is entitled to any, exclusive of time for cross-examination of any witness; (2) a witness list, identifying each witness the party reasonably expects to call in its case-in-chief and rebuttal, if the party is entitled to any rebuttal, identifying each witness by name and number, stating a good faith estimation of the witness's priority, and a summary of the witness's expected testimony that is suf-

ficiently specific to enable the court to determine the relevance and possible cumulativeness of the witness's testimony, and identifying to what counts and defendants the witness's testimony is relevant; and (3) an exhibit list, identifying each exhibit the party reasonably expects to use in its case-in-chief and rebuttal, if the party is entitled to any rebuttal, identifying each exhibit by number and brief descriptive title, stating a good faith estimation of the exhibit's priority, and a summary of the exhibit's content and purpose that is sufficiently specific to enable the court to determine the relevance and possible cumulativeness of the exhibit, and further identifying to what counts and defendants the exhibit is relevant.

The court found that this case involves multiple defendants and multiple counts, many of which charge violation of the same statute and all of which stem from the same alleged conspiracy or scheme, as well as many witnesses, and voluminous items of documentary and other evidence. The court was therefore concerned that at least some share of the evidence and testimony that could potentially be presented to the jury is likely to be cumulative, and that the trial of the case runs a substantial risk of being both confusing to a jury and excessively long.[1]

The court therefore made an extensive examination of its inherent power to manage the trial of a criminal case by imposing reasonable limits on the amount of evidence parties would be allowed to present and reasonable time limits to be imposed on parties in the presentation of their cases. The avowed purpose of such limits was to avoid cumulative evidence and waste of time, as authorized by *Fed.R.Evid.* 403. Extrapolating from the precedents it had examined, the court found the following general principles should guide the court in fashioning appropriate limitations for the sake of comprehensibility, economy, and fairness: (1) the court must impose no restriction that causes the information presented to become incomprehensible; and (2) no restriction or limitation should be imposed arbitrarily. In aid of these principles, the court declared that it would be guided by these general rules: (1) limitations must only be imposed when necessary to the just and efficient presentation of evidence, or, to put it another way, "if it isn't broken, don't fix it," which means leave areas that do not appear to be a problem well enough alone; (2) limitations should be made on the basis of an informed analysis, including review of proposed witness lists and proffered testimony, exhibits, or estimates of trial time; (3) no limitation may be imposed without balancing probative value against issues of delay, confusion, or waste of time pursuant to *Fed.R.Evid.* 403 and 611; (4) the parties should be allowed to decide how best to use whatever allotment is given them; (5) any pre-trial limitations must be flexibly administered during trial to prevent any sacrifice of justice to efficiency; and (6) changes in allotments, either admitting additional evidence or testimony or precluding more evidence or testimony than anticipated, must

1. In a fifty-nine page, forty-four count indictment returned on September 14, 1995, eleven defendants are each charged with one or more federal offenses, ranging from conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (Count I), to mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 through 42), to conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 43), to criminal forfeiture under 18 U.S.C. § 982 (Count 44). The indictment alleges a complex scheme to defraud individuals whereby defendants falsely represented to individuals that, as a result of a class-action lawsuit in the United States District Court in Colorado, the entire banking system in the United States, as well as the IRS and the Federal Reserve, were declared to be fraudulent and unconstitutional. Defendants allegedly represented that as a result of the Colorado lawsuit, any individual who had ever paid taxes or used Federal Reserve notes was eligible to receive "damages" if that individual filed a claim on defendants' form and paid defendants a fee of $300.00. The indictment further alleges that, as a result of this scheme, defendants obtained some 6,832 claims from individuals in 49 states and two Canadian provinces.

In a status report filed on May 13, 1996, shortly before a scheduling conference on preparation of this case for trial to begin on June 27, 1996, the United States represented that the likely number of documents the prosecution must review exceeds 100,000. Furthermore, the government represented that over one hundred specific exhibits have thus far been identified, but the case agent identifying those exhibits estimated that she had thus far "been through" only approximately ten percent of the potential exhibits. The government also represented that, to date, it had identified over three dozen potential witnesses.

only be made with notice and upon a determination of need. To these ends, the court directed the parties to file the Trial Management Reports described above, *ex parte* and under seal.

On May 28, 1996, the government moved to reconsider the court's order for *ex parte* Trial Management Reports and filed an accompanying brief. The government asserts that the court's requirements of *ex parte* reports on witness and exhibits is contrary to the rule of law set out in *United States v. Earley*, 746 F.2d 412 (8th Cir.1984), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985). The government suggests that as an alternative to the Trial Management Report, the court order a pre-trial conference pursuant to *Fed.R.Crim.P.* 17.1 the week prior to trial. The government admits, however, that such a conference is "problematical," because Rule 17.1 specifically states that it "shall not be invoked in the case of a defendant who is not represented by counsel." *Fed.R.Crim.P.* 17.1. The government suggests, however, that the court use the inherent power to manage litigation, upon which it relied in issuing its Order On Trial Management, to order a pre-trial conference to serve the court's trial management concerns as well as to ensure that all *pro se* defendants will be present at trial and aware of the court's expectations of them during trial.

Although the court was aware of the *Earley* decision, it did not review that case prior to issuing its Order On Trial Management. The court appreciates the government's efforts to bring that case to the attention of the court. Having now reviewed the case, the court is persuaded that it does not require withdrawal of the Order On Trial Management, which admittedly probed a largely uncharted frontier. The *Earley* decision does, however, provide useful warnings about where the court dare not tread while attempting to chart this frontier. In ruling on the government's motion to reconsider, the court will review the *Earley* decision and consider its applicability here.[2] In the course of these considerations, because the *Earley* decision focuses on the extent to which the court may accept *ex parte* submissions from the government in a criminal case, the court will also examine the extent to which the court may, or may be required, to make an *ex parte* evaluation of evidence prior to its presentation at trial, to determine whether the *ex parte* Trial Management Reports it has ordered are proper.

## II. LEGAL ANALYSIS

### A. The Earley Decision

In *United States v. Earley*, 746 F.2d 412 (8th Cir.1984), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), the Eighth Circuit Court of Appeals confronted the issue of "whether the district court may receive from the United States District Attorney a 'trial brief,' outlining expected testimony from the proposed witnesses, which neither the government nor the court makes available to defense counsel." *Earley*, 746 F.2d at 412–13. The court concluded that the practice of accepting such an *ex parte* brief from the government was improper. *Id.* at 413. In *Earley*, the "trial brief" was a fifty-five-page document containing an outline of the expected testimony of 120 prospective government witnesses, which the trial judge stated he had "always received" from the government for the purpose of being advised in advance of what to look for by way of evidence, what to expect from witnesses, and to spot areas where the court believed there might be some evidentiary problems. *Id.* Just prior to empaneling of the jury, defense counsel requested a copy of the government's *ex parte* "trial brief," but the court denied that request. *Id.* On appeal of a subsequent denial of a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, the Eighth Circuit Court of

---

**2.** The court has not waited for the defendants to respond to the government's motion for reconsideration for two reasons. First, the *pro se* defendants who are scheduled for trial on June 27, 1996, have not responded to a number of court orders or filed resistances to motions in the past. Second, the time to trial is short; therefore, the court concluded that a prompt resolution of questions about the requirement to file trial management orders was necessary to provide the parties with all opportunities to complete the necessary preparations.

Appeals considered the propriety of the court's receipt of the *ex parte* "trial brief."

The court observed that *ex parte* communications between a trial court and government counsel raise questions of due process and breach of legal and judicial ethics, and therefore should be discouraged as undermining confidence in the impartiality of the court. *Id.* at 416. The court remarked,

> [I]t is not controlling that the trial brief was intended to help the district judge carry out his trial responsibilities and to give advance warning of possible issues as to admissibility of evidence. The benign purpose does not insure against other tendencies for which *ex parte* communications are disfavored.

*Earley,* 746 F.2d at 416. The court identified those "other tendencies" as follows: (1) "the possible advantage gained by having the 'first word'"; (2) a "concern ... that the trial judge may form an opinion as to the truth of the evidence before it may be answered and challenged"; (3) a concern "with the 'insidious' nature of a court-prosecutor relationship which would allow such *ex parte* disclosures"; and (4) "a danger that the district court will be in possession of a body of information that does not become a part of the record and is not known to the defendant and subject to cross-examination." *Id.* (citing, *inter alia, Haller v. Robbins,* 409 F.2d 857 (1st Cir.1969)).

The *Earley* court also found of limited scope the argument that advance warning of evidentiary issues was less significant where the jury would be the ultimate finder of fact, because the court, even in a jury trial, "makes potentially important decisions on admissibility of evidence and the general conduct of the trial [and] also rules on motions for judgment of acquittal and for new trial," as well as bearing "sentencing responsibilities" that could be colored by advance knowledge of possible evidence. *Id.* at 417. Finally, the court rejected the argument that the taint of the *ex parte* communications was removed after the fact by according the defendant an opportunity to make similar *ex parte* submissions:

> We must also dismiss as irrelevant the government's argument that communica-

tion of the trial brief was not "ex parte" because Earley had notice of its submittal (and allegedly even a general knowledge of its contents); this fact does not obviate concerns with the time and manner in which evidence is put before the court. Similarly, the fact that Earley was offered the opportunity to submit his own trial brief does not justify a procedure which is of doubtful constitutionality because of a defendant's rights to be present during trial and to confront witnesses against him.

*Earley,* 746 F.2d at 417. The court therefore held as follows:

> [B]ecause of the potential for prejudice and violation of due process, submission of an *ex parte* trial brief is improper and ... the district court should not have accepted such a communication from the prosecution.

*Id.* The court then suggested that the procedures for a pre-trial conference pursuant to *Fed.R.Crim.P.* 17.1 were the more appropriate means for identifying evidentiary issues, as were conferences outside the presence of the jury during the course of trial to identify and consider difficult questions on the admissibility of evidence. *Id.* The court ultimately concluded, however, that the defendant was not entitled to relief under 28 U.S.C. § 2255, because he could show no prejudice from the submission of the *ex parte* trial brief. *Id.* at 418–19.

### B. Applicability Of The Earley Decision

The court concludes that the *Earley* decision is legally and factually inapplicable to the court's order for *ex parte* Trial Management Reports. First, the *Earley* decision considered an entirely different issue in entirely different factual circumstances. Instead of considering the court's power to *order* the parties to make simultaneous *ex parte* trial management reports, including identification of witnesses and exhibits, the *Earley* court considered the issue of whether it was improper for the district court to *accept* and *ex parte* "trial brief" submitted by the government attorney on counsel's initiative. *Earley,* 746 F.2d at 412–13. These factual and legal differences are critical to each and every one of the *Earley* court's

evaluations of the impropriety of the conduct in question in the *Earley* case.

The comments of the *Earley* court concerning "benign purpose" failing to overcome the tendencies for which *ex parte* communications are disfavored, *Earley*, 746 F.2d at 416, thus refer to the government attorney's purpose in submitting, on its own initiative, an *ex parte* brief. In this context, the government's intention that the brief help the district court carry out its trial responsibilities by giving advance warning of possible issues of admissibility of evidence, while ostensibly "benign," nonetheless meant that the government was seizing the initiative and putting forward its view not only on what questions might arise, but how they might be resolved. This "possible advantage gained by having the 'first word,'" *id.*, simply is not present in this case, where the court has prevented any party from having a prejudicial "first word." The *court's* benign purpose of identifying potentially cumulative and time-wasting evidence, a responsibility borne ultimately by the court pursuant to *Fed. R.Evid.* 403, is being served, on the court's initiative, by the *ex parte* submissions.

In the present circumstances, there need also be little "concern ... that the trial judge may form an opinion as to the truth of the evidence before it may be answered and challenged." *Id.* The avowed purpose of the Trial Management Reports is to allow the court to evaluate any potential evidence under the balancing test required by *Fed. R.Evid.* 403, which requires the court to balance *relevance* of evidence against cumulativeness. *Fed.R.Evid.* 403 (court may exclude even relevant evidence because of "considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). That balancing test does not require the court to take any position on the "truth" of the evidence, but only the "relevance" of evidence, which is antecedent to the question of truth. *See Fed.R.Evid.* 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The court will also have before it

any "answering" evidence the opposing party identifies in its own Trial Management Report, thus removing the one-sided version of "truthful" evidence troubling to the appellate court in *Earley*.

Perhaps as important as any other factor to the decision in *Earley* was the appearance of partiality the receipt of the government's *ex parte* brief suggested. Thus, the court identified as one of the tendencies for which *ex parte* communications are disfavored a concern "with the 'insidious' nature of a court-prosecutor relationship which would allow such *ex parte* disclosures." *Id.* Here, there can be no "insidious" relationship between the court and counsel for one party, because the court has directed each party to make the required disclosures. Thus, the *ex parte* submissions have not grown out of a presumption by any party that it, and it alone, is entitled to the court's ear. Instead, the requirement of *ex parte* submissions is stringently even-handed and the requirement that the submissions be made *ex parte* is to avoid standing usual criminal procedure on its head by requiring pre-trial disclosure of any information not normally disclosed to opponents pre-trial.

As to the fourth concern of the *Earley* court, although there may be some "danger that the district court will be in possession of a body of information that does not become a part of the record and is not known to the defendant and subject to cross-examination," *id.*, the procedure the court has ordered here also means that there is an off-setting possibility that the court will be in possession of a body of information that does not become a part of the record and is not known to the *government* and subject to cross-examination. There is consequently little real danger of the court being biased by an *ex parte* preview of witnesses and exhibits to the prejudice of one party or the other, which the *Earley* court considered a realistic concern when only one party had presumed to make an *ex parte* submission.

In noting the limited scope of an argument that *ex parte* communications by only one party made to a presiding judge were of less significance when a jury would be the trier of fact, the Eighth Circuit Court of Appeals

suggested in *Earley* that, even in a jury trial, the court "makes potentially important decisions on admissibility of evidence and the general conduct of the trial, ... rules on motions for judgment of acquittal and for new trial," and bears "sentencing responsibilities" that could be colored by advance knowledge of possible evidence. *Id.* at 417. This court reiterates its conclusion that the potential for any bias in such decisions is dramatically lessened when *ex parte* identification of witnesses and evidence is required, in an even-handed fashion, from all parties. This court notes further that there are various circumstances in which the court is allowed, or even required, to make much more extensive *ex parte* examinations of proffered evidence than are contemplated here to determine the need for such evidence, and there appears to be little concern that the court will be biased in making other admissibility determinations, ruling on motions for acquittal or new trial, or bearing its sentencing responsibilities.[3]

3. Two situations immediately present themselves. The first is the situation in which a defendant unable to pay witness fees seeks a subpoena from the court to secure the attendance of a witness "necessary to an adequate defense." *See, e.g., Fed.R.Crim.P.* 17(b) (before issuing a subpoena for a witness called by a defendant unable to pay the fees for such witness, the court must consider the *ex parte* application of a defendant and only "upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and *that the presence of the witness is necessary to an adequate defense*" order the subpoena to issue); *United States v. Hang,* 75 F.3d 1275, 1281–83 (8th Cir.1996) (*Fed.R.Crim.P.* 17(c) also authorizes an *ex parte* request for a subpoena duces tecum, and such a conclusion is "supported by principles of fundamental fairness and equality" and consistent with the objectives of the 1996 amendments to the rule; in order for a subpoena duces tecum to issue, the party must make an *ex parte* showing that the subpoenaed document is relevant, admissible, and requested with adequate specificity); *United States v. Chapman,* 954 F.2d 1352, 1361 (7th Cir.1992) (court held hearing pursuant to *Fed.R.Crim.P.* 17(b) to consider a petition for issuance of thirty-seven subpoenas; the district court held an *ex parte* hearing to determine which of the thirty-seven proposed witnesses were necessary to an adequate defense, and allowed subpoenas to issue for only fourteen of them; the appellate court upheld the district court's decision over objections that the defendant had been deprived of "key witnesses to his defense," because the district court has "wide discretion" to determine whether such subpoenas should issue); *United States v. Mayes,* 917 F.2d 457, 462 (10th Cir.1990) (a request for a subpoena pursuant to *Fed.R.Crim.P.* 17(b) need not be granted "if a requested witness would only provide cumulative evidence"), *cert. denied,* 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991); *United States v. Wyman,* 724 F.2d 684, 687 (8th Cir.1984) ("materiality" is also a proper consideration in an *ex parte* preview of evidence under *Fed.R.Crim.P.* 17(b)).

The second situation is when the defendant's need for expert testimony or the defendant's mental state is at issue in a criminal proceeding. *See, e.g., United States v. Nichols,* 21 F.3d 1016, 1017–18 (10th Cir.) (the district court must hold an *ex parte* hearing on an *ex parte* request for a court-appointed expert pursuant to 18 U.S.C. § 3006A(e)(1), but the hearing requirement is subject to waiver), *cert. denied,* — U.S. —, 115 S.Ct. 523, 130 L.Ed.2d 428 (1994); *United States v. Pofahl,* 990 F.2d 1456, 1471 (5th Cir.1993) (the district court is required to conduct an *ex parte* inquiry to determine whether a defendant's motion for a psychiatric expert under 18 U.S.C. § 3006A(e) should be granted), *cert. denied sub nom. Nunn v. United States,* 510 U.S. 898, 114 S.Ct. 266, 126 L.Ed.2d 218 (1993); *Liles v. Saffle,* 945 F.2d 333, 335–36 (10th Cir.1991) (a criminal defendant is entitled to psychiatric assistance at trial when he is able to make " 'an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense,' " quoting *Ake v. Oklahoma,* 470 U.S. 68, 82–83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985); general allegations without substantive supporting facts are not enough), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992); *United States v. Bercier,* 848 F.2d 917, 919 (8th Cir.1988) (a district court should not rule on an application for expert services pursuant to 18 U.S.C. § 3006A(e) without first conducting an *ex parte* proceeding to determine the need for the expert). Indeed, it has been this court's experience that, in conducting the *ex parte* hearing with defense counsel, the court must probe, sometimes quite deeply, into the nature of the defense to determine whether the requested expenditure of funds is reasonable.

However, these two situations do not exhaust the list of circumstances in which the court may or must make an *ex parte* preview of evidence to be submitted in a criminal trial. *See, e.g., United States v. Rodriguez–Andrade,* 62 F.3d 948, 954 (7th Cir.1995) (the district court clearly did not abuse its discretion in receiving an *ex parte* letter from the government regarding a motion in limine and placing the letter under seal, where the defendant was informed of the substance of the letter, which concerned on-going investigations involving a witness's attempts to bribe police officers, and the defendant was permitted to cross-examine the witness concerning the bribery attempts); *United States v. Isa,* 923 F.2d 1300, 1306–07 (8th Cir.1991) (*ex parte, in camera* review of an application for surveillance did not

The last impediment that might be posed by the *Earley* decision is the appellate court's assertion that neither notice of the *ex parte* submission by an opponent nor the opportunity to submit a party's own *ex parte* "trial brief" concerning witnesses would justify the court's acceptance of the initial submission made *ex parte* by the government. *Earley*, 746 F.2d at 417. This court agrees that a post hoc offer of an opportunity to make a comparable *ex parte* submission would not purge the taint from an unsolicited *ex parte* submission made by the government and accepted by the court, which is fraught with all the disfavored tendencies of the *ex parte* submission made in *Earley*. However, these disfavored tendencies are not present when, in the first place, it is the court that requires of *all* parties comparable *ex parte* submissions for the limited purpose of ensuring an efficient trial, which will accrue to the benefit of all of the parties. Consequently, the court concludes that simultaneous notice of a judicial requirement that *ex parte* reports be filed and even-handed application of that requirement to all parties does remove any taint that might arise in differing circumstances from the government's submission and the court's acceptance of an *ex parte* "trial brief" or identification of witnesses.

As a final point, the alternative suggested by the court in *Earley*, and by the government here, recourse to a pre-trial conference pursuant to *Fed.R.Crim.P.* 17.1, is not available under the express terms of that rule. *Fed.R.Crim.P.* 17.1 ("This rule shall not be invoked in the case of a defendant who is not represented by counsel"). At least, that alternative is not available as to the first set of defendants to be tried here, all of whom are proceeding *pro se*. The court deems it inappropriate to use any inherent trial management power to overcome the express terms of a rule of criminal procedure; however, the court concludes that such power may be exercised to a legitimate end when no rule or decision specifically prohibits the course the court has charted. *United States v. Isa*, 923 F.2d 1300, 1306–07 (8th Cir.1991) (observing that "the right of confrontation is 'not absolute,' and 'may ... bow to accommodate other legitimate interests in the criminal trial process,'" quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)).

In its prior ruling, the court documented the extensive authority for a court to exercise trial management power by limiting the time for presentation of evidence and the amount of evidence pursuant to *Fed.R.Evid.* 403 to avoid "undue delay, waste of time, or needless presentation of cumulative evidence." *Fed.R.Evid.* 403. If the court cannot obtain, *ex parte*, the information it needs to make reasonable trial management decisions, it faces the unacceptable alternative of making arbitrary trial management decisions or decisions based on "mere numbers," *Secretary of Labor v. DeSisto*, 929 F.2d 789, 795 (1st Cir.1991); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983), rather than decisions based upon a proper Rule 403 balancing of probative value against the negative factors of delay, cumulativeness, and waste of time. *Id.* The court concludes that *Earley* does not require the court to withdraw its Order On Trial Management or eliminate the requirement that the parties

violate a defendant's rights where the *in camera* procedures were required by the surveillance act, 50 U.S.C. § 1806, and were adequate to protect the defendant; the court noted further that "the right of confrontation is 'not absolute,' and 'may ... bow to accommodate other legitimate interests in the criminal trial process,'" quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)); *United States v. Napue*, 834 F.2d 1311, 1317–21 (7th Cir.1987) (the district court did not abuse its discretion in allowing *ex parte* proceedings with the government to consider allegations of the defendant's dangerousness as that issue pertained to pre-trial discovery where the showing that witnesses were in fear of the defendant was adequate and the court was presented with a plausible argument that witnesses would be endangered or deterred from testifying); *United States v. Adams*, 785 F.2d 917, 920 (11th Cir.) (an *ex parte* conference to discuss threats against a witness is proper where the district court insures that the conference is carefully conducted so that no rights of the defendant are threatened; where, as here, aspects of the *ex parte* conference threatened defendant's rights, there were still no grounds to find the trial had been unfairly tainted where the defendant failed to show any prejudice), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986).

make *ex parte* Trial Management Reports, while legitimate trial management concerns justify its order for submission of such reports *ex parte.*

However, the *Earley* decision does caution the court to ensure that the *ex parte* disclosures it requires be properly circumscribed to avoid any appearance of partiality or prejudgment of evidence. Upon review of its requirements for the filing of *ex parte* Trial Management Orders, the court finds one aspect that might conceivably raise a concern about improperly influencing the court about matters other than its interest in avoiding cumulative evidence and waste of time pursuant to *Fed.R.Evid.* 403. That requirement was that the parties indicate, as to witnesses and exhibits, a "good faith estimation of the [evidence's] priority" by designating the witness or exhibit with the letter A, B, or C, with A as most necessary, and C as least necessary. Although the requirement is analogous to a Rule 17(b) showing of necessity, it could improperly give a party an opportunity to have the "first word" on what evidence the party considers is most important or to suggest to the court what its opinion on evidence should be in the absence of immediate cross-examination. *See Earley,* 746 F.2d at 416. Therefore, the court will withdraw that portion of the Order On Trial Management requiring the parties to designate, in their Trial Management Reports, any estimation of the priority of a witness or exhibit.

### III. CONCLUSION

The court finds that the decision of the Eighth Circuit Court of Appeals in *United States v. Earley,* 746 F.2d 412 (8th Cir.1984), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), upon which the government relies, while providing some cautions concerning *ex parte* submissions in criminal cases, is not controlling on the issues addressed in the court's May 16, 1996, Order On Trial Management. Therefore, the government's May 28, 1996, motion to reconsider is granted to the extent that the court withdraws from the order for Trial Management Reports the requirement that the parties

indicate the priority of witnesses and exhibits, but is denied in all other respects.

**IT IS SO ORDERED.**