39 F.3d 279
 UNITED STATES of America, Plaintiff-Appellant,
v.
David ZABAWA, Amy Johnson, Tobias A. Young, also known as
Toby Young, Defendants,
and
Howard Charles Viveney, also known as Howard Stevens; Lori
Bingham, also known as Lori J. Serna; Anne Marie Bartley,
also known as Anne Marie Barnum; Lloyd John Espinoza, also
known as Larry Miller, also known as L. John Espinoza, also
known as John Miller; David Brett Banks; Brian Michael
Barnum; Ronald Carpenter; David A. Coon; Robert Franz;
Rocky Mountain Management, Inc., also known as Rocky
Mountain Network, a Delaware corporation, Defendants-Appellees.
 No. 93-1484.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 7, 1994.
 
 Gregory C. Graf, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., and David M. Conner, Asst. U.S. Atty., with him on the briefs), Denver, CO, for plaintiff-appellant.
 Daniel J. Sears, Denver, CO, for defendant-appellee Ronald Carpenter (joined in the brief, by defendants-appellees David Brett Banks, Anne Marie Bartley, and Howard Charles Viveney).
 E. Alexander DeSalvo, Denver, CO, for defendant-appellee Lori J. Bingham (joined in the brief, by defendant-appellee Lloyd Espinoza).
 Glen R. Anstine, Denver, CO, filed a brief, on behalf of defendant-appellee Robert Franz.
 Before MOORE and LOGAN, Circuit Judges, and O'CONNOR, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 The United States appeals from an interlocutory order by the district court issued in the prosecution of thirteen individual defendants under an indictment charging mail and wire fraud, and aiding and abetting, in violation of 18 U.S.C. Secs. 1341, 1343 and 2. The issues on appeal are (1) whether the government's appeal is cognizable under 18 U.S.C. Sec. 3731, and, if so, whether the district court erred (2) in compelling the government to elect twenty counts from the seventy-count indictment, and (3) in striking paragraph 22 of the indictment which alleged that 6,708 fraudulent transactions occurred in the course of one of the charged schemes.
 
 
 2
 * The government alleges the following facts pertinent to this appeal: In approximately August 1990, defendants David Zabawa, Mark J. Prody and David A. Coon established Rocky Mountain Network, Inc., a Delaware corporation doing business in Colorado (Rocky Mountain). Zabawa, Prody and Coon were officers; defendants Amy Johnson, Howard Charles Viveney and David Brett Banks held managerial positions in the office or in supervising the individuals who accepted telephone calls. Defendants Anne Marie Bartley, Brian Michael Barnum, Tobias A. Young, Lori Bingham, Ronald Carpenter, Lloyd John Espinoza and Robert Franz were telephone representatives or telemarketers.
 
 
 3
 Rocky Mountain, also a defendant, utilized five telemarketing schemes, two of which are the subject of this indictment. The first (the subject of counts 1-60) induced individuals to either pay $119.95 or $98.00 (depending upon the method of payment) to receive a "preapproved" credit card. Victims were lured by a postcard mailing informing them of their preapproved status, and encouraging them to "reserve" this credit approval and apply for either a Mastercard or Visa. More than 6,700 individuals paid for credit cards. The defendants were not authorized to issue credit cards and did not in fact do so. The second scheme (the subject of counts 61-70) was a mail fraud scam that promised victims valuable prizes in exchange for purchasing $169.95 in credit card protection. Approximately 1,500 individuals purchased the credit card protection but received neither the prizes nor the coverage. Rocky Mountain ceased operations in April 1991, when the Colorado State Attorney General's office seized their records.
 
 
 4
 During a pretrial conference held in April 1993, shortly after the indictment was filed, the district court instructed the government to confine the presentation of its case to five days, and to elect five mail fraud and five wire fraud counts from the indictment. It declared that the rest would be severed, saying that "[i]f you don't get convictions on the first five counts and you wish to proceed, you may do so." II R. 21. Thereafter various defendants filed motions including to sever, to strike portions of the indictment, and to dismiss. The government took no action then to elect the counts to be tried.
 
 
 5
 Approximately seven months later the district court held a hearing on pending defense motions, several of which addressed the court's earlier bench order: defendant Bingham had moved to compel election of counts and to sever her trial; defendants Bartley and Barnum had moved to sever; and defendant Viveney had moved to dismiss or compel election of counts, claiming inefficiency in trial preparation and hardship on counsel.
 
 
 6
 Following that hearing the district court entered an order that allowed the government to prosecute counts 61-70, which it said involved only two remaining defendants and five victims; but it limited the government to prosecution of only ten counts from among counts 1-60. I R. tab 32 at 11. The court did not order dismissal of the other counts, but indicated that if a witness whose testimony was material to a count being tried was unavailable the court might permit a substitution of counts on a "showing of good cause." Id. at 12. The court apparently believed that most defendants had or would enter plea agreements; although at the time it had not accepted any plea. Its order referenced "four remaining defendants," id. at 9, and that only Viveney and Espinoza were involved in counts 61-70, although eight defendants were named in those counts.[1] Finally, it ordered paragraph 22 of the indictment stricken as inflammatory and prejudicial because it referenced 6,708 alleged victims. Id. at 13. The government appeals from that November 4, 1993 order (the order or November 4 order).
 
 II
 
 7
 We first consider whether we have jurisdiction to review the district court order. Section 3731 reads in part:
 
 
 8
 In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
 
 
 9
 This statute was enacted to allow government appeals in criminal cases whenever constitutionally permitted. United States v. Wilson, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018-19, 43 L.Ed.2d 232 (1975).
 
 
 10
 Defendant Carpenter argues that we must dismiss the appeal because the district court neither dismissed counts of the indictment nor suppressed evidence.[2] The district court unmistakably ordered the government to elect a limited portion of the indictment for trial. United States v. Nakashian, 820 F.2d 549, 550 (2d Cir.) ("an order compelling an election between counts is a 'dismissal' for section 3731 purposes."), cert. denied, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987).
 
 
 11
 The district court apparently believed that by not dismissing the other counts, and by holding out to the government the possibility of allowing trial on one or more of those counts if a key witness was unavailable, or at a subsequent trial, that its order was not a "dismissal" for purposes of appeal under Sec. 3731. We are not persuaded. The instant case is not distinguishable in principle from United States v. Giannattasio, 979 F.2d 98 (7th Cir.1992), in which the district court directed a prosecutor to select five counts out of fifteen for trial and to move to dismiss the others without prejudice--explaining that the other ten counts could be prosecuted later if necessary. When the government refused, the court dismissed the entire indictment without prejudice, precipitating the government's appeal under Sec. 3731. We have no doubt the Seventh Circuit would have ruled it had jurisdiction over the appeal had the government appealed before the district court ordered the indictment dismissed. We are convinced that the district court's order--forcing a choice of counts without a formal dismissal of the other counts--is not significantly different from ordering a formal dismissal without prejudice. We conclude that we have jurisdiction under Sec. 3731 to review the November 4 order.
 
 
 12
 The district court decision striking paragraph 22 of the indictment is related to the order requiring the government to elect counts for trial because it goes to the fundamental question of how much control a district court may properly exercise over prosecutorial decisions. We have pendent jurisdiction to review on appeal issues that are otherwise not appealable when raised by an appellant or a cross-appellant. Snell v. Tunnell, 920 F.2d 673, 676 (10th Cir.1990), cert. denied, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). Consequently it is reasonable to review that decision at this juncture. Lankford v. City of Hobart, 27 F.3d 477, 478-79 (10th Cir.1994) (circuit court exercised appellate jurisdiction over nonfinal order which was subject of cross-appeal to allow for litigation of all that defendant's claims "at one time").
 
 III
 
 13
 We now turn to the merits of the district court's pretrial order limiting the government to prosecuting twenty counts of the seventy-count indictment. It is evident the district court considered this to be a matter of managing its trial docket. If that is the correct characterization, we would review for abuse of discretion. See United States v. Parra, 2 F.3d 1058, 1062 (10th Cir.) (severance), cert. denied, --- U.S. ----, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993). The district court initially justified its decision to limit the trial by expressing that the government was making "a mountain out of a mole hill" and questioning the need to present thirty-five individual victims to prosecute the case. II R. 20. In its November 4 order the district court was more specific.
 
 
 14
 Multiplicity is not the basis for my limiting the Government to its ten best counts. Instead, I limited the Government to its ten best counts on the grounds of judicial economy. It would be a waste of judicial resources if the Government were to parade into court thirty-five witnesses whose testimony would be largely redundant and would not impact the potential sentence to which defendants would be exposed.
 
 
 15
 I R. tab 32 at 11. The court acknowledged in a later discussion of its November 4 order "that although theoretically [the government] can proceed on all 60 counts, I trust that at some point in the proceeding, good judgment and good sense will prevail in the government, somewhere in the government, and ... the rest of this stuff can come in as relevant conduct at the sentencing hearing." VII R. 28.
 
 
 16
 The government contends that reducing its counts prevents it from presenting the necessary evidence to convict all defendants. The government has legitimate double jeopardy concerns if it is too restricted in its proof to secure convictions, even though in theory it might attempt to start over to try the severed counts. See United States v. Dixon, --- U.S. ----, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In the case before us some defendants sought severance of counts; some did not join severance motions, some asserted the counts were duplicitous. See Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (by opposing consolidation of two charges, defendant waived double jeopardy claim); United States v. Blyden, 930 F.2d 323 (3d Cir.1991) (same). Thus, at least some defendants would have substantial double jeopardy claims against a later prosecution under severed counts if they are acquitted in a trial as conducted under the restrictions imposed by the district court.
 
 
 17
 Certainly a district court has reasonable discretion in appropriate cases to manage its docket by granting particular defendants separate trials or disallowing cumulative testimony on a particular charge. But the order appealed here neither separates defendants for trial nor limits testimony relevant to a single charged crime. It limits the prosecution to the testimony of ten victims of a telemarketing scheme, to prove only ten of seventy charged crimes against thirteen individual defendants (fourteen, including the defendant corporation).
 
 
 18
 Because the district court's ruling forces the government to abandon, at least temporarily, the prosecution of separate crimes it has charged against defendants who are scheduled to be tried, we believe the ruling goes beyond those subject to the court's discretionary control and impinges upon the separation of powers. Prosecutorial discretion is a function of the executive branch, not the judiciary.
 
 
 19
 In our criminal justice system, the Government retains "broad discretion" as to whom to prosecute. ... "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." ... This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.
 
 
 20
 Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citations omitted); see also United States v. Kysar, 459 F.2d 422, 424 (10th Cir.1972) ("[The prosecutor] has the power to prosecute or not to prosecute; this decision is not reviewable by any court."); United States v. Olson, 504 F.2d 1222, 1223-25 (9th Cir.1974) (district court ordered prosecutor to elect one of four counts for trial despite lack of showing of prejudice to either party if all counts tried together; reviewing court held that district court could not address United States Attorney's allegedly excessive indictment practice by controlling the prosecution). Unless the district court rests its decision on the need to protect or preserve constitutional rights, it may not interfere with the prosecutorial function. Wayte, 470 U.S. at 607-08, 105 S.Ct. at 1530-31.
 
 
 21
 We are in substantial agreement with the Seventh Circuit's Giannattasio decision, which is closely analogous to the case before us. There the court stated:
 
 
 22
 A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them. Prosecutorial discretion resides in the executive, not in the judicial, branch, and that discretion, though subject of course to judicial review to protect constitutional rights, is not reviewable for a simple abuse of discretion. This principle is most often invoked when the issue is whom to prosecute ... but it has equal force when the issue is which crimes of a given criminal to prosecute. If Dr. Giannattasio committed fifteen Medicare frauds, a judge cannot tell the Justice Department to prosecute him for only five of the frauds, or to prosecute him for five now and the rest later, if necessary. Of course there are judicially enforceable checks on discretion to indict. But they are protections for defendants, not for judges.... No rule authorizes the judge to sever offenses in an indictment because he believes that a trial of all the counts charged would clog his docket without yielding any offsetting benefit in the form of a greater likelihood of conviction or a more severe punishment.
 
 
 23
 979 F.2d at 100 (citations omitted). We conclude that the district court erred in ordering the government to elect counts, and we reverse that portion of the November 4 order.
 
 IV
 
 24
 We review for abuse of discretion the district court's order striking paragraph 22 of the indictment as inflammatory and prejudicial. United States v. Collins, 920 F.2d 619, 631 (10th Cir.1990), cert. denied, 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). Fed.R.Crim.P. 7(d) allows district courts to strike "surplusage from the indictment or information." Use of Rule 7(d) is appropriate when the allegation is not relevant, or is inflammatory or prejudicial. Collins, 920 F.2d at 631. We must decide whether the language of paragraph 22 is an essential element of the alleged crimes.
 
 
 25
 Although the government now argues that the reference to 6,708 victims illustrates the size and scope of the fraudulent schemes charged in counts 1-60, and is relevant, we note that it did not object or otherwise respond to the motion to strike paragraph 22. That paragraph is part of a multi-defendant indictment involving individuals with varying degrees of responsibility in perpetuating the fraud and is not an integral part of the indictment as a whole. The government identified thirty victims in the indictment and can establish all of the elements of the charged crimes without proving the scheme had 6,708 victims. We hold that the district court did not abuse its discretion in striking paragraph 22 of the indictment.
 
 
 26
 AFFIRMED in part, REVERSED in part, and REMANDED to the district court for further proceedings in accordance with this opinion. The motion by defendant Bingham to strike the addendum to the government's brief and attachments to the government's response to the motion to dismiss the appeal are denied.
 
 
 
 *
 The Honorable Earl E. O'Connor, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The pleas of none of the 13 individual defendants named in the indictment counts had been accepted by the court at the time of its ruling. One, Carpenter, pleaded later. Several others signed plea agreements, some accepted by a magistrate judge (the government says it made deals for misdemeanor pleas with some defendants only because of the court's ruling that is now under appeal). The district court, however, has not accepted those pleas, and has withdrawn its delegation of authority to the magistrate judge to deal with the defendants. Thus, it appears most of the named defendants are still subject to the possibility of a trial
 
 
 [2]
 The government objects to Carpenter's standing to appeal because he has pleaded guilty to one count and is only awaiting sentencing. We do not discuss this contention because this court must always consider its jurisdiction to hear an appeal, sua sponte if necessary. Also other defendants, by adopting Carpenter's brief, make the same argument