**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant / Cross-Appellee.

v.

STEVEN J. SCHNEIDER; LINDA K. SCHNEIDER, also known as Linda Atterbury, doing business as Schneider Medical Clinic,

      Defendants - Appellees / Cross-Appellants.

Nos. 09-3028 and 09-3045

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:07-CR-10234-MLB-1 & 2)**

---

Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Marietta Parker, Acting United States Attorney, and Tanya J. Treadway, Assistant United States Attorney, for the District of Kansas) for Plaintiff / Appellant / Cross-Appellee.

Eugene V. Gorokhov of Eugene V. Gorokhov, PLLC, Arlington, Virginia, and Lawrence W. Williamson, Jr., of Williamson Law Firm, LLC, Kansas City, Missouri (Kevin P. Byers of Kevin P. Byers Company, L.P.A., Columbus, Ohio, with them on the briefs) for Defendants / Appellees / Cross-Appellants.

---

Before **TACHA**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

This is an interlocutory appeal by the United States from a pre-trial order issued in the prosecution of Stephen and Karen Schneider (the Schneiders). A thirty-four count indictment charged the Schneiders with, among other things, impermissibly dispensing controlled drugs at their family-owned clinic resulting in the deaths of numerous patients. Count 5 of the indictment charged the Schneiders with illegally distributing drugs to eighteen patients, resulting in death. The target of the government's appeal is the district court's order excluding evidence of all but one of the eighteen deaths charged in Count 5 and the court's placement of a ten-day limitation on the government's time to present its case. The Schneiders cross-appeal from the district court's denial of their motion to exclude the government's expert testimony. Exercising jurisdiction under 18 U.S.C. § 3731, we VACATE the district court's trial restrictions and REMAND. We DISMISS the Schneiders' cross-appeal for lack of jurisdiction.

## I.     BACKGROUND

At the time relevant to the indictment, Stephen Schneider was a doctor of osteopathy and his wife, Linda Schneider, was a licensed practical nurse. They owned and operated Schneider Medical Clinic in Haysville, Kansas, where they provided pain management treatment including the prescription of controlled substances. On December 17, 2008, a Kansas grand jury issued a second superseding indictment charging: Count 1 -- conspiracy to unlawfully distribute drugs, commit health care fraud, engage in money-laundering, and defraud the United States in violation of 18 U.S.C. § 371; Counts 2-5 -- illegal distribution of drugs resulting in patient deaths in violation of 21 U.S.C. §

841(a)(1); Count 6 -- illegal distribution of a specific drug, Actiq (fentanyl), to thirty-seven named individuals in violation of  21 U.S.C. § 841(a)(1); Counts 7-9 -- health-care fraud resulting in the deaths of the three individuals named in Counts 2-4 in violation of 18 U.S.C. § 1347; Counts 10-17 -- health-care fraud in violation of 18 U.S.C. § 1347; and Counts 18-34 -- money-laundering in violation of 18 U.S.C. § 1957.

The allegations in Count 5 charged:

From in or about January 2002, and continuing through in or about July 2007, within the District of Kansas, the defendants, . . .  not for a legitimate medical purpose and outside the usual course of professional medical practice, did knowingly and intentionally distribute and dispense, and caused to be distributed and dispensed, Schedule 2, 3 and 4 controlled substances to at least the below-listed individuals, which resulted in their serious bodily injury and deaths: [listing eighteen names].

(Appx. at 79-80.)  Counts 2, 3 and 4 each contained specific allegations regarding the treatment history and death of a single individual not named in Count 5.[1]

In January 2008, the original presiding judge granted the government's unopposed motion to designate the case as complex.  The parties estimated trial would take approximately eight weeks.  The case was reassigned to the current judge on March 17, 2008, and at a status conference on April 15, 2008, trial was set for February 2, 2009.  On January 12, 2009, the court told the parties they must trim their witness lists "[s]o that this case can be tried reasonably within four to five weeks."  (Appx. at 149.)  On January 16, 2009, the Schneiders wrote the court to object to its time limitation, stating it "would [make it] impossible to provide an adequate . . . defense, given the scope of the

---

[1] The government also identified thirty-seven additional uncharged deaths which are not the subject of this appeal.

allegations in the Indictment."  (*Id.* at 113.)

At the January 26, 2009 status conference—one week before trial was to begin—the court announced two *sua sponte* rulings which are the basis of this appeal.  First, the court addressed the length of the trial stating: "I appreciate the defense counsels' letter, but I'm sticking to four to five weeks . . . .  I think that this case can be tried in that period of time and I will count on it being tried."  (*Id.* at 155.)  The court then ruled the government's evidence of patient deaths would be limited to the three individuals named in Counts 2, 3 and 4, explaining: "This is a Rule 403 ruling . . . ."[2]  (*Id.* at 157.)  This colloquy followed:

> Prosecutor:  Excuse me.  Based on that ruling, Judge, you've essentially dismissed Count 5 of the Indictment.
>
> The Court:  Then it's dismissed.
>
> Prosecutor:  Well, Judge, I don't believe you have a basis to dismiss Count 5 and we would probably have to take an interlocutory appeal on that.
>
> The Court:  Well you go right ahead and do that.  But this case starts next Monday.  And if you take an interlocutory appeal, you better be counting on winning it because this case is going to be tried the way I say it's going to be tried.  And I would rethink that if I were you.  And you better have your boss down here to talk to me about it.

(*Id.* at 158-59).

After a brief recess, the court stated:

---

[2]  Rule 403 of the Federal Rules of Evidence provides for the exclusion of relevant evidence "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Let me go back for a minute to the Government's threat – which I consider a threat, and nobody threatens me in this courtroom – to take an interlocutory appeal. I will allow on Count 5 the government to prove the charge regarding [the first named individual]. As to the other deaths in count 5, I find under Rule 403 that the probative value is substantially outweighed by confusion of issues, misleading the jury, and considerations of delay, waste of time and also presentation of cumulative evidence.

(*Id.* at 161-62.) The prosecutor asked for clarification as to the effect of the ruling on the experts' opinions, explaining the expert opinions were based on a review of over 100 files. The court ruled the opinion would not be allowed "if it mentioned the patient deaths other than the four" allowed by the court's ruling. (*Id.* at 162.) The exchange continued:

The Court: I'm not going to cut down the numbers of other patients. I would have no way of doing that. But what I am telling you is you've got ten days to put your case on. Think about it.

Prosecutor: Well, judge, that's really five days if you think about it because . . . they get to cross-examine my witnesses, and . . . I assume that they [will] cross-examine my witnesses for the length of time my witnesses are on [direct examination]. I have five days to present a case. That is, with all due respect to the Court, impossible given the activities of these defendants.

The Court: You've got ten days to present your case. I don't care how you do it. That's not my job. I think you can.

Prosecutor: Well, Judge, I will be real honest with you. You know . . . .

The Court: I am not extending this case to . . . however long the counsel want it extended.

Prosecutor: I'm not asking that.

The Court: Ten days. Sit down please. You've got ten days to put your case on. If you don't get it on, then I will kick the counts out that you don't cover. That's it. The Defendants get ten days. That's all. I'm not having argument about this. I can't help

- 5 -

what the Government charges but I can control how much time the jury spends listening to the evidence and how much time I have to spend on it; and I've spent a lot of time on this already.

(*Id.* at 163-64.)

An order issued two days later ruled:

The court finds under Rule 403(b), that the probative value of the evidence of over sixty deaths is substantially outweighed by confusion of issues and the potential to mislead the jury. Moreover, the evidence of the large number of deaths will certainly cause delay and result in a needless presentation of cumulative evidence. The government may present evidence of the three charged deaths in counts 2, 3 and 4. The government may also present evidence of [the first named individual]'s death in order to prove the allegations in count 5.

(*Id.* at 123.)

The government filed this interlocutory appeal challenging the court's rulings. Shortly thereafter, the Schneiders filed a cross-appeal from the court's denial of their earlier motions to exclude the government's expert testimony, claiming error under Rule 702 of the Federal Rules of Evidence. The government moved to dismiss the cross-appeal for lack of jurisdiction.

## II.     GOVERNMENT'S APPEAL

### A.     Limitation of Evidence

"The government can take an interlocutory appeal only with specific statutory authority." *United States v. Louisiana Pacific Corp.*, 106 F.3d 345, 348 (10th Cir. 1997). The Criminal Appeals Act, 18 U.S.C. § 3731, provides in relevant part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information . . . as to any one or more counts, *or any part*

*thereof*,[3] except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding . . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

(Emphasis added). The question here is whether the district court's ruling was, in essence, a dismissal of "any one or more counts, or any part thereof," or whether it merely excluded cumulative or prejudicial evidence. An appealable order under § 3731 excluding evidence for the purposes of case management is reviewed for abuse of discretion. *See United States v. Zabawa*, 39 F.3d 279, 283 (10th Cir. 1994). However, an appeal based on the dismissal of a count charged in an indictment raises separation of powers concerns which may render the court's ruling beyond its discretionary case management powers. *Id.* at 284 (district court's pretrial order limiting the government to prosecuting twenty counts of a seventy-count indictment in an effort to manage its docket went "beyond [rulings] subject to the court's discretionary control and impinge[d] upon the separation of powers.").

The government maintains the district court's ruling impermissibly interferes with its prosecutorial discretion and reaches beyond the bounds of the court's discretionary

_____

[3] The language "*or any part thereof*" was added by a 2002 amendment to Criminal Appeals Act.

control.  The Schneiders argue the order's limitation of evidence is not a dismissal of Count 5 but is merely a proper exercise of the court's authority to manage the case to prevent cumulative, unnecessary and misleading evidence.

In *United States v. Zabawa*, the district court limited the government's case to twenty counts of a seventy-count indictment because "[i]t would be a waste of judicial resources if the Government were to parade into court thirty-five witnesses whose testimony would be largely redundant and would not impact the potential sentence to which defendants would be exposed." *Id.* at 283.  The government appealed, claiming the reduction in the counts "prevent[ed] it from presenting the necessary evidence to convict all defendants." *Id.* at 284.  We recognized "a district court has reasonable discretion in appropriate cases to manage its docket," but found "the district court's ruling force[d] the government to abandon, at least temporarily, the prosecution of separate crimes it has charged against defendants who are scheduled to be tried." *Id.*  We stated, "[u]nless the district court rests its decision on the need to protect or preserve constitutional rights, it may not interfere with the prosecutorial function." *Id.*

We quoted with approval the Seventh Circuit's reasoning in *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir. 1992):

> A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them.  Prosecutorial discretion resides in the executive, not in the judicial, branch, and that discretion, though subject of course to judicial review to protect constitutional rights, is not reviewable for a simple abuse of discretion.  This principle is most often invoked when the issue is whom to prosecute . . . but it has equal force when the issue is which crimes of a given criminal to prosecute.  If Dr. Giannattasio committed fifteen Medicare frauds, a judge cannot tell the

> Justice Department to prosecute him for only five of the frauds, or to prosecute him for five now and the rest later, if necessary. Of course there are judicially enforceable checks on discretion to indict. But they are protections for defendants, not for judges . . . . No rule authorizes the judge to sever offenses in an indictment because he believes that a trial of all the counts charged would clog his docket without yielding any offsetting benefit in the form of a greater likelihood of conviction or a more severe punishment.

*Zabawa*, 39 F.3d at 285.

The Schneiders argue *Zabawa* may be distinguished because the court here did not actually dismiss Count 5. Rather, it merely limited the government to evidence sufficient to prove the charge. The government concedes the district court did not dismiss Count 5 outright but argues it could have charged each named individual in Count 5 as a separate count against the Schneiders.[4] Thus, the inclusion of this charged conduct in one count does not change the substance of the charges or the effect of the district court's ruling.

Prior to the 2002 amendment to § 3731, we required the dismissal of an entire count before appellate jurisdiction attached, rejecting the reasoning of those courts who looked to the practical effect of the district court's ruling to determine jurisdiction. *See Louisiana Pacific Corp.*, 106 F.3d at 348 (rejecting "a test under which the government can take an interlocutory appeal from an order dismissing a portion of a count if the portion provided a 'discrete basis for the imposition of criminal liability.'"). We found

---

[4] While each count of an indictment is considered a single offense, a single count may include multiple allegations of illegal acts which could have been pled as a single count if the allegations are part of a single, continuing scheme. *See United States v. Jaynes*, 75 F.3d 1493, 1502 (10th Cir. 1996) (holding it is permissible for one count to charge sixty-four forgeries of the same name on checks because "the alleged forgeries were all part of a single scheme and thus properly charged in a single count").

no basis in the statute for such a test and noted:

> It is not mere formalism, nor an irrational result, to require the government to plead allegations in separate counts, a minimal burden, in order to preserve its right to take an interlocutory appeal of the dismissal of such counts . . . . "The precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, in case any other proceedings are taken against the defendant for a similar offence, the record will show with accuracy to what extent he may plead a former acquittal or conviction."

*Id.* at 349 (quoting *Sanabria v. United States*, 437 U.S. 54, 65-66 (1978)).

However, the 2002 amendment now specifically allows appeal from the dismissal of "any portion" of a count. While the government's reasons for naming one patient each in Counts 2, 3 and 4, but eighteen individuals in Count 5 remains somewhat of a mystery, we do not second-guess the government's permissible choice.[5] The court's ruling effectively dismissed separately charged conduct brought by the government against these defendants. In this way, the district court's order impermissibly intruded upon the authority of the executive branch to design a criminal prosecution in the way it deems most prudent.

This is not to say the trial court may not exclude some of this evidence at trial

_____

[5] In *Jaynes*, "the United States filed a three-count indictment against [Jaynes] and her husband . . . . Count one charged the defendants with forging the name of Julia A. Jones on sixty-four United States Treasury checks . . . dated from May 2, 1988, through July 2, 1993 . . . . Count two charged the defendants with unlawfully passing, uttering and publishing the same checks . . . . Count three charged the defendants with conspiring to forge, utter and publish the sixty-four Treasury checks . . . ." 75 F.3d at 1497. We cited *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987) for the proposition, "it is well established that two or more acts, each of which alone could constitute an offense, may be charged in a single count if they could be characterized as part of a single, continuing scheme." *Jaynes*, 75 F.3d at 1502. A specific allegation within the count that a single continuing scheme exists is not necessary.

under Rule 403. The power of district courts to manage their dockets is deeply ingrained in our jurisprudence. *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (holding that a trial court's power to dismiss for lack of prosecution "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993) ("District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion."). "Certainly a district court has reasonable discretion in appropriate cases to manage its docket by granting particular defendants separate trials or disallowing cumulative testimony on a particular charge." *Zabawa*, 39 F.3d at 284. But such restrictions may be imposed only when they do not foreclose the government from fairly presenting its case.

In this instance, Count 5 alleges eighteen incidents in violation of 18 U.S.C. § 841. "To convict a doctor for violating § 841, the government must prove: (1) that the defendant distributed or dispensed a controlled substance; (2) that the defendant acted knowingly and intentionally; and (3) that the defendant's actions were not for legitimate medical purposes in the usual course of his professional medical practice or were beyond the bounds of medical practice." *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006) (quotations omitted); *see also United States v. Nelson*, 383 F.3d 1227, 1231-32 (10th Cir. 2004) ("A practitioner has unlawfully distributed a controlled substance if she

prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose."). The government maintains the evidence of the charged conduct is necessary to establish the Schneiders' knowledge and intent to dispense the drugs for other than legitimate medical purposes. The government intends to prove the Schneiders were aware of the patients' overdose deaths but did nothing to change their practices. Thus, it argues, evidence of the charged conduct in Count 5 is necessary.

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function.

*United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quotations and citations omitted). Because it is unknown at this point how much of this evidence is needed to establish the necessary elements in Count 5 or to negate any explanation of innocent mistake, the court's premature conclusions impermissibly attempted to trim the government's case.

The district court erred in its wholesale exclusion of all evidence relating to seventeen of the eighteen allegations in Count 5.[6] It is the government's decision, subject to constitutional protections, whether to charge these allegations in a single count rather than individually. A trial court's case management may not interfere with the government's ability to prosecute criminal activity any more than it can intrude upon a

---

[6] Significantly, the trial court merely picked the first name listed rather than inquiring whether this particular patient was the government's strongest representative of the allegations in Count 5.

- 12 -

defendant's opportunity to defend.

## B.    <u>Alternative Arguments</u>

The Schneiders claim the evidence "that Dr. Schneider was responsible for the deaths of over twenty patients creates a substantial risk that the passion of the jury will be so inflamed that the jury will be unable to engage in a rational analysis of the evidence." (Appellee's Br. at 27.)  We agree presenting evidence of a doctor's responsibility for the deaths of over twenty patients may have a profound effect on the jury, but that is the precise conduct for which the Schneiders are charged.  This is not evidence of collateral activity or prior bad acts; the government intends to prove the deaths alleged in Count 5 were the result of an ongoing scheme to distribute drugs for purposes other than legitimate medical treatment.  While the evidence is certainly prejudicial, it is not unfairly prejudicial.

The Schneiders also claim we can affirm the district court on two other grounds. *See S. Utah Wilderness Alliance v. Bureau Land Mgmt.*, 425 F.3d 735, 745 n.2 (10th Cir. 2005) ("An appellee may defend the judgment won below on any ground supported by the record." (quotations and alterations omitted)).  First, they argue the evidence relating to the treatment and deaths of the seventeen individuals is not relevant under Federal Rule of Evidence 104(b) [7] because its relevance is conditioned on facts which cannot be

---

[7]  Rule 104(b) provides:

When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

proved. Second, they claim the indictment is infirm because the seventeen additional deaths alleged in Count 5 are duplicitous.

"We may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." *Roberts v. Barrerra*, 484 F.3d 1236, 1244 (10th Cir. 2007) (unable to rule on an alternative ground because the record unclear) (quotations omitted). We reject the Schneiders' argument under Rule 104(b) because, even assuming the Schneiders' reasoning is correct, the record before us is insufficient to indisputably determine the issue. Accordingly, we decline to affirm on this alternative ground.

The Schneiders claim the court's ruling may also be affirmed because Count 5 is duplicitous by charging the Schneiders with eighteen distinct violations of the statute in one count.[8] Multiple charges in one count may present a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction. *Jaynes*, 75 F.3d at 1503 n.7. As discussed above, however, we have permitted one count in an indictment to contain multiple charges that may otherwise be separate counts if the alleged violations "were all part of a single scheme." *Id.* at 1502. The Schneiders do not argue the separate deaths could not be part of one scheme and we are not persuaded by the Schneiders' argument that, due to the complexity of this case, a specific unanimity instruction cannot be relied upon to cure

---

[8] Duplicity is defined as the joinder of two or more distinct and separate criminal offenses in the same count of an indictment. *United States v. Haber*, 251 F.3d 881, 888 (10th Cir. 2001).

- 14 -

potential jury confusion.  *See id.* at 1503 n. 7; *see also United States v. Sasser*, 971 F.2d

470, 478 (10th Cir. 1992).[9]

C.      **Time Limit Set By Court**

The government asserts the district court unreasonably restricted the time allowed

for it to present its case at trial.  They claim that, as a practical matter, the district court

limited the government to approximately five days to present its evidence which

effectively excludes the government's presentation of evidence and is therefore

reviewable under 18 U.S.C. § 3731.  *See United States v. McVeigh*, 106 F.3d 325, 330 n.3

(10th Cir. 1997) ("§ 3731 can apply to rulings which, though nominally outside the scope

of the statute, have the practical effect of orders clearly covered.  Specifically, orders

directing the government to take action and specifically providing for the exclusion of

related evidence in the event of noncompliance have been deemed conditional

suppression orders and thereby brought within a liberal construction of the statute."

(citations and quotations omitted)).  "Trial courts are permitted to impose reasonable time

limits on the presentation of evidence to prevent undue delay, waste of time, or needless

_____

[9] The Schneiders did not raise this issue to the district court.  Federal Rule of Criminal Procedure 12(b)(3)(B) requires "a motion alleging a defect in the indictment or information" to be made before trial.  Rule 12(c) authorizes the court to "set a deadline for the parties to make pretrial motions and may also schedule a motion hearing."  In this case, the court set the deadline for May 16, 2008, but the Schneiders did not challenge the indictment as duplicitous.  Under Rule 12(e), "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides."  However, "[f]or good cause, the court may grant relief from the waiver."  *Id.; see also Haber*, 251 F.3d at 889 ("In some circumstances, a defendant can raise a late challenge to a duplicitous indictment if cause is shown that might justify the granting of relief from the waiver." (quotations omitted)).  We discern no reason to grant the Schneiders relief from their waiver.

presentation of cumulative evidence." *Life Plus Int'l v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003) (quotations omitted). "[T]he district court constantly produces legal product and manages trials and, therefore, is somewhat of an expert in the time that is required to conduct litigation." *Case v. Unified Schl. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998) (addressing court's expertise to determine appropriate attorney fees). Nonetheless:

> [I]t may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind. Such limits should be sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive.

*Life Plus*, 317 F.3d at 807 (quotations omitted). "When there is an objection to the exclusion of evidence as a result of time limits, the record must show a proper basis or explanation by the district court for the exclusion." *Harris v. Chand*, 506 F.3d 1135, 1141 (8th Cir. 2007).

The parties estimated the case would take eight weeks. Without consulting the parties, and over their objections, the district court allotted each side ten days, including cross-examination. It did not explain why it imposed the limitation and did not address how it would consider time spent on motions, bench conferences and other matters.

Although the court implied the time limit was inflexible and would not be changed regardless of what evidence may be properly admitted, its position was taken prior to our ruling on the first issue. The district court is aware of the government's need to present its case -- as is its right – as well as the potential for serious constitutional violations if

unreasonable limitations are imposed on the defendant's opportunity to defend against the charges. *See United States v. Janati*, 374 F.3d 263, 273-75 (4th Cir. 2004) (addressing "the appropriate balance between the district court's right to manage trials and the government's right to prove its case"); s*ee also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1121 (10th Cir. 2006) ("The right to present a defense is anchored in the Fifth and Fourteenth Amendment right to due process and the Sixth Amendment right to compulsory process." (quotations omitted)). Because our resolution of the first issue alters the scope of the evidence to be presented at trial, we decline to address the second issue.

**D.     Conclusion**

The district court was without authority, in effect, to dismiss the majority of the charged conduct in Count 5 and abused its discretion. Therefore, the district court's pretrial orders are VACATED and the case REMANDED. We are confident that on remand the court will proceed in a manner consistent with this order and accord a fair opportunity for the government to present the entirety of its case and provide the Schneiders adequate time to present their defense.

### III.     CROSS-APPEAL

The Schneiders cross-appeal from the district court's denial of their motion to exclude the government's expert testimony and its denial of a *Daubert*[10] hearing requiring the government to establish the reliability of its evidence. The government

_____

[10]  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

filed a motion to dismiss the cross-appeal for lack of jurisdiction.

The Schneiders do not argue the district court's order is a final order. Rather, they contend we may exercise jurisdiction pursuant to pendant jurisdiction or the collateral order doctrine.

The court's evidentiary rulings are not appealable collateral orders. The application of the collateral order doctrine is subject to a three-part test derived from the Supreme Court's decision in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949). *See Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 914 n.5 (10th Cir. 2008). "To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Crystal Clear Commc'ns, Inc. v. Southwestern Bell Tel. Co.*, 415 F.3d 1171, 1178 (10th Cir. 2005)). While we need only find the absence of one of these elements to eliminate jurisdiction, the Schneiders' cross-appeal fails several turns. The admissibility of expert testimony is not conclusively determined because the district court may modify its ruling at trial. Even if the issue is separate from the merits of the case a court's evidentiary rulings are clearly reviewable on appeal. "[T]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Mohawk Inc., Inc. v. Carpenter*, 558 U.S. ---, No. 08-678, 2009 WL 4573276, *5 (Dec. 8, 2009) (quotations omitted). The Schneiders'

argument that the issues are unreviewable because a more exacting standard will apply on appeal is unpersuasive and unsupported by authority. "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance . . . a particular injustice [might be] averted does not provide a basis for jurisdiction under § 1291." *Id*. (quotations omitted).

We also reject the Schneiders' argument that this Court should take discretionary pendant jurisdiction. "The Supreme Court has stated that pendant claims are appealable 'if, and only if, they too fall within *Cohen's* collateral-order exception to the final-judgment rule.'" *Tarrant*, 543 F.3d at 914 (quoting *Abney v. United States*, 431 U.S. 651, 663 (1977)).[11] Thus, pendant jurisdiction is equally unavailable. Because we lack jurisdiction over the Schneiders' cross-appeal, it is **DISMISSED**.

---

[11] It is doubtful whether pendant jurisdiction even applies to a § 3731 cross-appeal.

> In *Abney*, 431 U.S. at 662, the Supreme Court held that a defendant could immediately appeal, under the collateral order doctrine, the denial of a motion to dismiss raising a Double Jeopardy defense . . . . The Court cautioned that its holding was based on the special considerations permeating Double Jeopardy claims. Other claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss . . . . are appealable if, and only if, they too fall within the collateral-order exception to the final-judgment rule. Cases interpreting *Abney* appear to categorically foreclose pendent appellate jurisdiction in criminal cases.

*United States v. Eberhart*, 388 F.3d 1043, 1051-52 (7th Cir. 2004) (listing cases), *overruled on other grounds by Eberhart v. United States*, 546 U.S. 12 (2005); *see also United States v. DiBernardo*, 775 F.2d 1470, 1474 n.8 (11th Cir. 1985) ("It is also clear that this court is without pendent jurisdiction over appellees' cross-appeal.") (citing *United States v. MacDonald*, 435 U.S. 850, 857 n. 6 (1978)).