FILED
United States Court of Appeals
Tenth Circuit

July 11, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DOROTHY ROSS, individually and as
surviving spouse of Elmer Ross,
deceased,

      Plaintiff - Appellant,

v.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY, a
Delaware corporation,

      Defendant - Appellee.

No. 12-6013
(D.C. No. 5:10-CV-01354-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MATHESON**, **EBEL**, and **MURPHY**, Circuit Judges.

---

In 2006, a train owned and operated by The Burlington Northern & Santa Fe

Railway Co. ("BNSF") struck and killed Elmer Ross as he drove a road grader through a

crossing. His wife, Dorothy Ross, brought a wrongful death action against BNSF in

federal court.

The district court granted summary judgment to BNSF. Relying on a video

---

     * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

recording of the collision, the court determined that Mr. Ross violated an Oklahoma

statute requiring motorists to stop when "[a]n approaching railroad train is plainly visible

and is in hazardous proximity to [a] crossing." Okla. Stat. tit. 47, § 11-701(A)(4). Mr.

Ross's violation of the statute, the court concluded, was negligence per se and insulated

BNSF from liability under Oklahoma law.

The plaintiff now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we

reverse and remand for proceedings consistent with this opinion.

## I.      BACKGROUND

### A.      *Factual History*

In the afternoon of April 10, 2006, Mr. Ross was operating a road grader on a dirt

road outside of Waynoka, Oklahoma. He was driving parallel to railroad tracks owned

and operated by BNSF. At the same time, a BNSF train traveling at approximately 69

miles per hour approached from behind Mr. Ross.

At an intersection, Mr. Ross turned left onto a short stretch of road that crossed the

tracks. The railroad crossing was marked with crossbucks,[1] but there were no gates or

flashing lights. As Mr. Ross's grader entered the crossing, the train collided with it,

killing Mr. Ross. A video camera mounted on the front of the train recorded the accident.

---

[1] "Crossbucks are black-and-white, X-shaped signs that read 'RAILROAD CROSSING.'" *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1211 n.4 (10th Cir. 2008) (quotations omitted).

## B.    *Procedural History*

In December 2010, Dorothy Ross, in her individual capacity and as Mr. Ross's surviving spouse, brought a wrongful death action against BNSF in Oklahoma federal district court.

BNSF moved for summary judgment and submitted the video recording of the accident in support of its motion. BNSF argued that the video conclusively established that Mr. Ross violated Okla. Stat. tit. 47, § 11-701(A)(4) by failing to stop at least 15 feet from the tracks when the train was plainly visible and in hazardous proximity to the crossing. BNSF contended that, under Oklahoma law, a motorist's violation of § 11-701(A)(4) constitutes negligence per se and is the legal cause of a collision with a train— i.e., the proximate and supervening cause. *See Akin v. Mo. Pac. R.R. Co.*, 977 P.2d 1040, 1055-56 (Okla. 1999); *Hamilton v. Allen*, 852 P.2d 697, 699-700 (Okla. 1993).

In response, the plaintiff submitted an expert report detailing the sight distance deficiencies from Mr. Ross's perspective as he approached the tracks. According to the expert report, the grader would have been two feet from the nearest rail at Mr. Ross's earliest opportunity to see the train, and the train would have been 351 feet from the point of impact. The plaintiff also submitted an animation illustrating the difficulty of detecting the oncoming train from Mr. Ross's perspective.

The district court granted summary judgment to BNSF on the basis of the video recording. It determined that the recording "shows that the approaching railroad train was plainly visible and in hazardous proximity to the crossing but that [Mr. Ross] did not

-3-

even slow down, much less stop, when he approached the railroad crossing where the accident occurred." Aplt. Appx. at 481. Without mentioning the plaintiff's evidence, the court agreed with BNSF that the recording "conclusively demonstrates" Mr. Ross was negligent per se because he violated § 11-701(A)(4) and that, under Oklahoma law, his conduct was the legal cause of the collision. *Id.* at 482.

## II.    **DISCUSSION**

The main issue on appeal is whether the district court erred in determining that Mr. Ross violated § 11-701(A)(4) because he failed to stop when a train was "plainly visible."[2] The plaintiff insists that the video recording of the collision is inconclusive on this issue and argues that she provided evidence raising a genuine dispute as to whether the train was plainly visible.

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences from the evidence in favor of the plaintiff, the nonmoving party. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013). Summary judgment is appropriate if BNSF "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hilti*, *Inc.*, 703 F.3d 1206,

---

[2] There is no dispute that the train was in "hazardous proximity" under § 11-701(A)(4) or that Mr. Ross failed to stop at the crossing.

1215 (10th Cir. 2013) (quotations omitted).

As the movant, BNSF has the "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)). If it satisfies this requirement, the burden shifts to the plaintiff to "set out facts that would be admissible in evidence," Fed. R. Civ. P. 56 (c)(4), and "from which a rational trier of fact could find for [her]," *Libertarian Party*, 506 F.3d at 1309.

Oklahoma law applies in this diversity action. *See McPhail v. Deere & Co.*, 529 F.3d 947, 957 (10th Cir. 2008). "We review the district court's interpretation of [Oklahoma] law de novo." *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).

We first address whether BNSF showed there was no genuine dispute that the train was plainly visible to Mr. Ross. After determining that BNSF failed to meet this standard, we address its arguments that we should affirm on alternative grounds.

A. *Section 11-701(A)(4)*

1. **"Plainly visible"**

Section 11-701(A) provides four circumstances when a motorist "shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of [a railroad crossing], and shall not proceed until he can do so safely." Okla. Stat. tit. 47, § 11-701(A). Under subsection (4), a motorist must stop if "[a]n approaching railroad train is *plainly visible* and is in hazardous proximity to such crossing." *Id*. § 11-701(A)(4)

(emphasis added).

The Oklahoma Supreme Court has "held that the failure to conform to the requirements of [§ 11-701(A)] is negligence per se." *Akin*, 977 P.2d at 1055. Further, a motorist's violation of the statute constitutes "*the supervening,* and *therefore, proximate cause*" of a resulting collision with a train and "insulates the railroad from the legal consequences of its own lack of due care, if any." *Id.* at 1056; *see also Hamilton*, 852 P.2d at 699-701.

Whether Mr. Ross violated § 11-701(A)(4) turns on whether the train was "plainly visible" when he approached the railroad crossing. We have located no Oklahoma precedent explicitly defining "plainly visible." But in interpreting § 11-701(A), the Oklahoma Supreme Court has looked to Texas case law interpreting an identical statute. *See Akin*, 977 P.2d at 1055 (discussing *Snodgrass v. Ft. Worth & Denver R.R. Co.*, 441 S.W.2d 670 (Tex. Civ. App. 1969)). Under the Texas statute, "a train is not 'plainly visible' . . . unless a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it." *Texas & N. O. R. Co. v. Day*, 316 S.W.2d 402, 405 (Tex. 1958) (quotations omitted)); *see also Texas v. P. Ry. Co. v. Davis*, 374 S.W.2d 305, 310 (Tex. Civ. App. 1963) (discussing "plainly visible" as when "a reasonably prudent person, in the exercise of ordinary care should have seen the train and realized that an attempt to proceed over the crossing ahead of the train was hazardous"). We predict that the Oklahoma Supreme Court would adopt such an objective definition of "plainly visible" for § 11-701(A)(4), asking whether a reasonably

-6-

prudent person in the driver's position would have seen the approaching train.[3]

2.    **Genuine dispute as to whether the BNSF train was plainly visible**

To establish that its train was plainly visible, BNSF submitted a video recording of the collision taken from a camera mounted on the front of the train. From this perspective, the recording shows Mr. Ross's road grader approach the crossing without stopping. The collision occurred in daylight, and there does not appear to be any physical obstruction between Mr. Ross's grader and the train.

The plaintiff countered this evidence with an expert report detailing the sight distance deficiencies at the crossing.[4] She also submitted an animation showing the difficulty Mr. Ross would have faced in seeing the train as his grader approached the tracks from a parallel road (with the train approaching from behind) and then turned onto a short stretch of road leading to the crossing. On appeal, the plaintiff contends that the evidence she presented in the district court raised a genuine dispute as to whether the

---

[3] In reviewing jury instructions involving § 11-701(A), the Oklahoma Supreme Court has approved of an objective test considering the driver's circumstances. *See Mo.-Kan.-Tex. R. Co. v. Harper*, 468 P.2d 1014, 1018 (Okla. 1970) (affirming denial of jury instruction on § 11-701 in part because there was evidence that the approaching train could not be seen from the perspective of the victim's vehicle); *id.* at 1019 (concluding that "in a general way" the trial court was correct to instruct jurors that "the law requires those approaching a railroad crossing to exercise the care an ordinarily prudent person would use for his own safety in the same situation and circumstances and to avoid getting himself into a place of danger").

[4] In the district court, BNSF filed motions in limine to strike the plaintiff's expert reports under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court never held a *Daubert* hearing or ruled on these motions, and BNSF does not argue on appeal that the plaintiff's expert reports are inadmissible.

train was plainly visible. We agree.

When parties present conflicting evidence at the summary judgment stage, a court may rely on video footage to grant summary judgment if the recording "utterly discredit[s]" the opposing party's version of the facts. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (reversing denial of summary judgment where video footage "blatantly contradicted" the opposing party's version of the facts such that "no reasonable jury could believe it"). BNSF's recording of the collision does not meet this standard.

The recording is grainy, and Mr. Ross's grader does not come into view until shortly before the collision. The video shows the perspective of the train approaching the crossing, not Mr. Ross's viewpoint from the grader. This is significant because the train was not plainly visible unless a reasonably prudent person in Mr. Ross's position would have seen it.

The video also does not clearly show the angle of the grader as it turns to approach the crossing. The angle may be important to a jury because, as the plaintiff's animation shows, the orientation of the large, slow vehicle as it turned toward the tracks could have impeded Mr. Ross's view of a train approaching from behind. Indeed, the grader first veered to the right before it could turn toward the tracks, putting itself in a position where the driver's sightline would be even more limited than in the parallel position. BNSF's video gives an incomplete picture of what a reasonably prudent driver in Mr. Ross's position would have seen and how much distance there was between the track and the grader before the train became plainly visible.

-8-

Even if the recording were sufficient to carry BNSF's initial burden as the movant for summary judgment, the plaintiff responded with facts raising a genuine dispute about whether the train was plainly visible. The plaintiff's expert opined that, because of the sight distance limitations at the crossing and the orientation of the grader as it approached the tracks, Mr. Ross would have been two feet from the nearest rail at his earliest opportunity to see the train. This calculation, if ultimately proved true, would suggest that Mr. Ross had no opportunity to stop the grader at least 15 feet from the nearest rail after the train was plainly visible, as § 11-701(A) requires. Indeed, by its terms, the statute applies only when a crossing permits a motorist to stop between 50 feet and 15 feet from the nearest rail after a train becomes plainly visible. The plaintiff's evidence raises a dispute about whether a reasonably prudent driver in Mr. Ross's position would have been capable of stopping at such a distance.

This analysis does not suggest that BNSF's video recording is unpersuasive. A jury might conclude by a preponderance of the evidence that the video shows that the train was plainly visible and that Mr. Ross had a reasonable opportunity to see the train and stop the grader. But at this stage, we must ask whether the plaintiff submitted evidence that raises a genuine dispute as to whether the train was plainly visible and whether a rational trier of fact could side with her. We think she has shown that the video does not so utterly discredit her evidence that no reasonable jury could believe her

version of events.  *See Scott*, 550 U.S. at 380.[5]

## B.  *Alternative Grounds*

BNSF argues that we should affirm the district court's summary judgment ruling on two alternative grounds.  It contends that the video recording establishes that Mr. Ross violated two other motor vehicle statutes—§ 11-701(A)(3) and § 11-801(E)—when he approached and crossed the railroad tracks, and that his violation of these statutes insulates the railroad from liability.

For the reasons discussed below, we decline to affirm on these bases.

---

[5] In *Scott*, the Supreme Court relied on video evidence to grant summary judgment to a law enforcement officer on a plaintiff's Fourth Amendment excessive force claim. 550 U.S. at 380-81.  The Court determined that the video "so utterly discredited" the plaintiff's version of events that there was no genuine issue for trial.  *Id.* at 380.

BNSF insists that, as in *Scott*, its video recording wholly discredits the plaintiff's version of events.  As discussed above, we do not think that is the case.  Moreover, we note that the video evidence in *Scott* was taken from the officer's perspective, which was the perspective relevant to whether he used excessive force in violation of the plaintiff's Fourth Amendment rights.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene . . . .").  Here, BNSF's video evidence is from the train's perspective, not the relevant perspective under the statute:  that of the motorist who must stop if a train is plainly visible.

After appellate argument in this case, BNSF submitted supplemental authority pursuant to Fed. R. App. P. 28(j).  In *Short v. Union Pacific Railroad Co.*, No. 110,770 (Okla. Civ. App. April 19, 2013), the Oklahoma Court of Civil Appeals affirmed a grant of summary judgment in favor of a railroad after viewing video evidence establishing that the plaintiff violated § 11-701(A)(4).  We do not find this unpublished decision persuasive because we have not seen the video upon which the court relied and because it is unclear whether the plaintiff in *Short* submitted evidence disputing that the train was plainly visible.

1.    **Section 11-701(A)(3)**

BNSF contends that the video recording and other evidence establishes that Mr. Ross violated § 11-701(A)(3). That statute requires a motorist to stop at a railroad crossing when a "train approaching within approximately . . . (1,500) feet of the highway crossing emits a signal audible from such distance" and the "train, by reason of its speed or nearness to such crossing, is an immediate hazard." Okla. Stat. Ann. tit. 47, § 11-701(A)(3). BNSF notes that, in the recording, the train can be heard sounding its Leslie horn three times at varying distances from the crossing: at 2,222 feet for 2.3 seconds, 1,532 feet for 2.9 seconds, and 993 feet for 8.6 seconds.

The district court discussed the evidence of the horn blasts from the train. But it did so in reference to the plaintiff's argument that BNSF was negligent for failing to sound its horn "in compliance with the General Code of Operating Rules adopted by . . . BNSF." Aplt. Appx. at 480. The court did not reference § 11-701(A)(3), and its summary judgment ruling was not based on a violation of that statute. Thus, we can affirm the court's ruling on this basis only if it is "dispositive, indisputable, and appear[s] clearly in the record." *United States v. Schneider*, 594 F.3d 1219, 1227 (10th Cir. 2010) (quotations omitted). Those circumstances do not exist here.

In response to BNSF's summary judgment motion, the plaintiff submitted evidence that raised a genuine dispute about whether the train emitted a signal that would have been audible to a reasonably prudent driver in Mr. Ross's position at the crossing. This included evidence that (1) the plaintiff was at the crossing waiting for Mr. Ross and

-11-

did not recall hearing the train's signal; (2) another motorist driving parallel to the train on the other side of the tracks did not recall hearing the horn blasts; (3) crew members aboard the train did not recall hearing the horn blasts; and (4) an expert opined that Mr. Ross's position inside the road grader would "have posed a significant acoustical barrier" to the train's signal. Aplt. Appx. at 328.

Although BNSF's recording establishes that the train sounded its horn, it does not establish whether the horn was audible from Mr. Ross's position. *See* Okla. Stat. Ann. tit. 47, § 11-701(A)(3) (the signal must be "audible from such distance"). Plaintiff's evidence raises a genuine dispute of fact on this material issue. BNSF is therefore not entitled to summary judgment on this alternative basis.

2.     **Section 11-801(E)**

Finally, BNSF argues that the video recording establishes that Mr. Ross violated § 11-801(E). This statute requires motorists who are "approaching and crossing an intersection or railway grade crossing" to "drive at an appropriate reduced speed." Okla. Stat. tit. 47, § 11-801(E).

This is not a proper ground for affirmance. Evidence in the record conflicts on the speed of the grader before the collision. The plaintiff provided expert evidence that the grader was traveling at 4.25 miles per hour as it entered the crossing. The train's engineer testified that the grader was traveling "[a]t such a slow speed, [he] didn't know if it was stopped or if it was going." Aplt. Appx. at 251. The Federal Railroad Administration's Highway-Rail Grade Crossing Accident/Incident Report estimated Mr.

-12-

Ross's speed at 1 mile per hour. Finally, the Official Oklahoma Traffic Collision Report estimated that Mr. Ross was traveling at 15 miles per hour. This conflicting evidence provides no "dispositive, indisputable" basis to affirm the district court's ruling. *Schneider*, 594 F.3d at 1227.

### III.    **CONCLUSION**

For the foregoing reasons, we reverse the district court's summary judgment ruling and remand for further proceedings. Finally, having requested and considered the parties' views as to whether Volume 3 of the Appendix should remain under seal, we order that it be unsealed.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge